[Cite as *In re L.S.*, 2012-Ohio-3794.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| | : | JUDGES: |
| IN THE MATTER OF: | : | W. Scott Gwin, P.J. |
| | : | Sheila G. Farmer, J. |
| L.S. & D.S. | : | Julie A. Edwards, J. |
| | : | |
| | : | Case Nos. 12-CA-001 & 12-CA-002 |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:               Civil Appeal from Holmes County
                                       Court of Common Pleas, Probate &
                                       Juvenile Division, Case Nos. 09-N-
                                       149 & 09-N-150

JUDGMENT:                              Affirmed

DATE OF JUDGMENT ENTRY:                August 21, 2012

APPEARANCES:

For Appellee                           For Appellant

SEAN M. WARNER                         WILLIAM PAUL BRINGMAN
Assistant Prosecuting Attorney         13 East College Street
STEVE KNOWLING                         Fredericktown, Ohio  43019-1192
Prosecuting Attorney
Holmes County, Ohio
164 E. Jackson Street
Millersburg, Ohio  44654

*Edwards, J.*

**{¶1}** Appellant, Joseph Slabaugh, appeals from the January 6, 2012, Judgment Entry issued by the Holmes County Court of Common Pleas, Probate & Juvenile Division, in Case No. 09N149 and the December 20, 2011, Judgment Entry issued by the Holmes County Court of Common Pleas, Probate & Juvenile Divisions, in Case No. 09N150.

STATEMENT OF THE FACTS AND CASE

**{¶2}** Appellant is the biological father of L.S. (DOB 1/17/05) and D.S. (DOB 6/14/07). On July 27, 2009, a complaint was filed in Case No. 09N149 alleging that L.S. was a neglected and dependent child. On the same date, a complaint was filed in Case No. 09N150 alleging that D.S. was a neglected and dependent child. Both complaints indicated that there were concerns over lack of parental supervision as well as unsanitary living conditions.

**{¶3}** As memorialized in a Judgment Entry filed in both cases on September 11, 2009, appellant and his wife entered a plea of admission to both charges involving L.S. and D.S and the court found the children to be neglected and dependent. They also entered a plea of admission to the complaints involving two older children, C.S. and S.S. who are not the subject of this appeal. A case plan that was filed on August 25, 2009, was adopted by the trial court.

**{¶4}** Following a review hearing on April 15, 2010, the trial court ordered that the protective supervision previously granted to Holmes County Department of Job & Family Services (HCDJFS) continue.

{¶5} On June 4, 2010, HCDJFS filed motions in both cases asking that protective supervision be extended for an additional six (6) months. On June 18, 2010, HCDJFS filed motions in both cases seeking an emergency review hearing. The agency, in its motions, indicated that it had concerns over the children's safety and the unsanitary condition of the home and that appellant and his wife were not making sufficient progress on their court ordered case plan. An emergency review hearing was scheduled for June 22, 2010.

{¶6} Pursuant to a Judgment Entry filed in both cases on June 23, 2010, temporary custody of L.S. and D.S. and the two older children was granted to HCDJFS. A review hearing was held on July 12, 2010. As memorialized in a Judgment Entry filed in both cases on July 14, 2010, the trial court ordered that temporary custody of the children remain with HCDJFS and granted the motion to extend temporary custody. Following a review hearing on August 23, 2010, the trial court granted temporary custody of L.S. and D.S. to Doyle and Lydia Lee, appellant's aunt and her husband. The Lees were also granted temporary custody of C.S. and S.S., the two older children. The trial court also ordered that HCDJFS have protective supervision over all of the children for a six month period beginning on August 23, 2010.

{¶7} A review hearing was held on October 5, 2010. Pursuant to a Judgment Entry filed on the same day in both cases, the trial court ordered that temporary custody remain with the Lees and that visits between appellant and his wife and D.S. and L.S. be supervised by the Lees. The trial court ordered that the frequency and duration of the visits be as agreed upon by the Lees and appellant and his wife.

{¶8} On December 2, 2010, HCDJFS filed a Motion for an Emergency Review Hearing. HCDJFS, in its motion, alleged that the Lees were unable to maintain custody of the two older children, C.S. and S.S, due to severe behavioral issues. As memorialized in a Judgment Entry filed on December 6, 2010, temporary custody of C.S. and S.S., was returned to appellant and his wife with protective supervision by HCDJFS.

{¶9} Thereafter, on January 12, 2011, HCDJFS filed a motion in both cases seeking to extend temporary protective supervision for a period of six months. Following a hearing held on March 28, 2011, the trial court granted such motion and ordered that temporary custody of C.S. and S.S. remain with their parents while temporary custody of L.S. and D.S. remain with the Lees. The trial court extended protective supervision.

{¶10} On June 3, 2011, HCDJFS filed a Motion to Terminate the Protective Supervision Order/Temporary Custody Order and to Close Case. The motion was filed on both cases. The agency, in its motion, asked that legal custody of L.S. and D.S. be awarded to the Lees and that their cases be closed. Appellant, on June 10, 2011, filed an objection to the motion for legal custody. Hearings were held on September 16, 2011 and September 19, 2011.

{¶11} At the September 19, 2011, hearing, the parties stipulated that legal custody of D.S. would be granted to the Lees and that the only issue to discuss with respect to D.S. was visitation. With respect to L.S., the parties agreed to supervised visitation unless and until L.S.'s counselor, Denise Sampson, stated otherwise. The parties agreed to keep L.S.'s case open for sixty days and to have her counselor submit

her recommendation to the trial court under seal fourteen days ahead of the next review hearing.

**{¶12}** At the September 19, 2011, hearing, Michelle Kelly, a home-based therapist through Your Human Resource Center, testified that she started working with the subject family in this case in December of 2009. At the time, the primary concerns were the physical state of the home and the ability to provide adequate supervision for the children. She testified that appellant was not very involved in the parenting process and that his wife was overwhelmed. At the time Kelly initially started working with the family, appellant, his wife and all four children were in the home.  Kelly testified that the older two children, who were twins, needed a lot of attention and that L.S. would wander off by herself when they came home from school. She further testified that by the fall of 2010, she was not confident that appellant and his wife were ready for their children to return. Once C.S. and S.S., who are twins, were returned to the home in December of 2010, Kelly went out to the house twice a week focusing one week on parenting and the other on the twins.

**{¶13}** Kelly testified that one of the twins, S.S., was acting out sexually while appellant and his wife were in the room and that "for the most part it would go- it would occur for awhile before it would be addressed." Transcript at 20. She testified that, during a visit in December of 2010, at which all four children were present, the twins demanded most of the attention. During a second visit in May of 2011 that Kelly observed, L.S. and D.S. did not refer to appellant and his wife as mom and dad and L.S. was nervous when her mother took her to the bathroom. Kelly testified that, during the

visit in December of 2010, appellant's wife did not clean L.S. up well after a bowel movement.

{¶14} Kelly testified that, at the end of the second visit, L.S. and D.S. were ready to go and were excited to see the Lees. She further testified that, the last time she was at appellant's trailer in August of 2011 there was trash all over and at least one cockroach. She indicated that the trailer posed a safety hazard to L.S. and D.S. who were too young to identify the safety concerns and avoid them. Kelly also testified that appellant's wife was overwhelmed and lacked confidence that she could manage all four children. According to Kelly, both L.S. and D.S. had made tremendous progress developmentally while with the Lees during the pendency of the case. She indicated that D.S.'s communication skills had improved and that L.S. was much more out-going.

{¶15} During the hearing, Kelly was asked what concerns she would have if L.S. and D.S. had visitation with their parents every other weekend. She testified that the biggest concern was that the twins acted out sexually and had poor impulse control. According to Kelly, appellant and his wife minimized the sexual acting out among the oldest two girls and the alleged victimization of L.S.

{¶16} When asked, Kelly indicated that she thought that it was important that there be some type of companionship schedule set up between D.S. and his mother and that D.S. did not fear his mother. She further testified that C.S. and S.S. had different needs than D.S., who was younger.

{¶17} At the hearing, the Lees indicated to the trial court that they did not agree with once a month visits and believed that every other month would be appropriate. The Guardian Ad Litem, when asked by the trial court what he thought, noted that L.S. and

D.S. did not refer to appellant and his wife as mom and dad, but called them by their first names. He noted that most of the attention during visits was focused on D.S. and that L.S. did her own thing. The Guardian Ad Litem also indicated that he thought visitation should be every three to four weeks.

**{¶18}** At the conclusion of the hearing, the court stated that L.S.'s case would remain open and that there would be a review hearing in approximately sixty days. He noted that L.S.'s counselor would be filing a written report fourteen days prior to the hearing and that D.S.'s case would be closed.

**{¶19}** The trial court, pursuant to a Judgment Entry filed in Case No. 09N150 on September 22, 2011, stated that the agency's June 3, 2011 motion was held in abeyance as to D.S. The trial court noted that the parties were unable to reach an agreement on the issue of visitation between D.S. and his parents. Pursuant to a Judgment Entry filed in Case No. 09N149 on September 22, 2011, the trial court denied the agency's Motion to Terminate the Protective Supervision Order/Temporary Custody Order and to Close Case as to L.S. The trial court further ordered that temporary custody of L.S. would remain with Doyle and Lydia Lee with continued protective supervision by HCDJFS. The trial court also ordered that visits between L.S. and her parents would continue to be supervised and upon agreement of the parties as to frequency and duration. In its Judgment Entry, the trial court indicated that it would consider allowing unsupervised visits between L.S. and her parents if the court received a letter from L.S.'s counselor stating that unsupervised visits would be in L.S.'s best interest.

{¶20} On October 19, 2011, appellant filed a motion in Case No. 09N149 seeking a definitive visitation schedule with L.S. Appellant, in his motion, alleged that the Lees had cancelled visitation between L.S. and her parents the last two weekends. The Lees filed a letter in response to such motion on October 24, 2011. A Judgment Entry was filed in Case No. 09N149 stating that appellant's motion would come on for an initial hearing at the scheduled November 21, 2011 review hearing.

{¶21} An informal hearing was held in lieu of the November 21, 2011 review hearing. The trial court, as memorialized in a Judgment Entry filed in Case No. 09N149, ordered that temporary custody of L.S. remain with the Lees and that the protective supervision order continue. The trial court also ordered that the Guardian Ad Litem would observe one visit between L.S. and D.S. and their parents and would file a report with the court on the issue of visitation on or before December 14, 2011. The trial court, in its order, also ordered that appellant's motion regarding visitation would be held in abeyance. In a Judgment Entry filed the same day in Case No. 09N150, the trial court stated that it would not issue a decision on the question of visitation between D.S. and his parents until after the court had received and reviewed the report of the Guardian Ad Litem.

{¶22} On November 30, 2011, the Lees filed a letter with the court stating that they opposed any unsupervised visits between D.S., L.S. and appellant and his wife.

{¶23} The Guardian Ad Litem, in a report filed in both cases on December 13, 2011, recommended that visits continue to be supervised for a period of three to four hours at a neutral location agreed to by the Lees and appellant and his wife and that the visits occur at least every other weekend or at other times agreed to by the parties. The

Guardian Ad Litem noted that there "was no affection displayed between the children and their parents or sisters during or at the end of the visit" and that L.S. referred to her family as "monsters" and exhibited fear of being left by the Lees. The Guardian Ad Litem also indicated that he believed that if appellant and his wife were granted weekend visits, L.S. would suffer emotionally. The Guardian Ad Litem further indicated that the neutral visitation setting helped alleviate L.S.'s fears.

{¶24} The trial court, via a Judgment Entry filed in Case No. 09N149 on December 19, 2011, denied appellant's Motion for Definitive Visitation Schedule. The trial court ordered that temporary custody of L.S. would remain with the Lees and that all visits between L.S. and either or both of her parents would continue being supervised by the Lees and that the dates and times of these visits could continue to be as agreed upon by the Lees and appellant and his wife. The trial court stated that it would consider the question of legal custody of L.S. on January 4, 2012 and stated that any party could file pleadings on the issue of legal custody on or before such date.

{¶25} A Judgment Entry was filed on December 20, 2011 in Case No. 09N150 granting legal custody of D.S. to the Lees and terminating the agency's protective supervision order. The trial court ordered that visitation between D.S. and his parents continue and that such visits continue to be supervised by the Lees until the Lees determined that supervision was no longer necessary. The trial court ordered that the frequency, duration and location of the visits were to be as agreed upon by the Lees and appellant and his wife. The trial court closed the case.

{¶26} On December 28, 2011, appellant filed a letter stating his objection to the proposed grant of legal custody to the Lees. On January 6, 2010, the trial court issued a

Judgment Entry in Case No. 09N149. The trial court in its Judgment Entry, granted legal custody of L.S. to Doyle and Lydia Lee, terminated the protective supervision order and closed the case. The trial court also ordered that visitation between L.S. and her parents continue to be supervised by the Lees and that that the frequency, duration and location of the visits were to be as agreed upon by the Lees and appellant and his wife.

{¶27} On January 17, 2012, appellant filed a Notice of Appeal from the trial court's December 20, 2011 Judgment Entry in Case No. 09N150. The appeal has been assigned Case No. 12CA001.

{¶28} Appellant now raises the following assignment of error in such case:

{¶29} "THE TRIAL COURT ERRED IN ITS JUDGMENT OF DECEMBER 20, 2011 [SIC] IN TERMINATING PROTECTIVE SUPERVISION/TEMPORARY CUSTODY, CLOSING CASE, GRANTING LEGAL CUSTODY TO DOYLE LEE AND LYDIA LEE, AND ORDERING VISITATION WITH APPELLEE TO BE SUPERVISED BY DOYLE AND/OR LYDIA LEE UNTIL DOYLE AND LYDIA LEE DEEM SUPERVISED VISITS ARE NOT NECESSARY AND THAT ARE AGREED UPON BY SAID CUSTODIANS AND PARENTS."

{¶30} On January 17, 2012, appellant also filed a Notice of Appeal from the trial court's January 6, 2012 Judgment Entry in Case No. 09N149. The appeal has been assigned Case No. 12CA002.

{¶31} Appellant raises the following assignment of error in such case:

{¶32} "THE TRIAL COURT ERRED IN ITS JUDGMENT OF DECEMBER 20, 2011 IN TERMINATING PROTECTIVE SUPERVISION/TEMPORARY CUSTODY, CLOSING CASE, GRANTING LEGAL CUSTODY TO DOYLE LEE AND LYDIA LEE,

AND ORDERING VISITATION WITH APPELLEE TO BE SUPERVISED BY DOYLE AND/OR LYDIA LEE UNTIL DOYLE AND LYDIA LEE DEEM SUPERVISED VISITS ARE NOT NECESSARY AND THAT ARE AGREED UPON BY SAID CUSTODIANS AND PARENTS."

**{¶33}** For purposes of judicial economy, we shall address the two cases together.

Case No. 12CA001 & 12CA002

**{¶34}** Appellant, in his assignment of error in both cases, argues that the trial court erred in terminating protective supervision, granting legal custody of L.S. and D.S. to Doyle and Lydia Lee and closing the two cases. Appellant also argues that the trial court erred in ordering that appellant's visitation with L.S. and D.S. be supervised by the Lees until the Lees deemed that supervised visitation was no longer necessary and that visitation be as agreed upon by the Lees and appellant and his wife.

**{¶35}** We first note this was a grant of legal custody, not permanent custody. Legal custody does not divest parents of residual parental rights, privileges, and responsibilities. *In re C.R.,* 108 Ohio St.3d 369, 2006–Ohio–1191, 843 N.E.2d 1188, at ¶ 17. This means appellant may petition the court for a modification of custody in the future. *Id.*

**{¶36}** We recognize that the right to parent one's children is a fundamental right. *Troxel v. Granville,* 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.E.2d 49 (2000); *In re Hayes,* 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). "However, government has broad authority to intervene to protect children from abuse and neglect." *In re C.F.,* 113 Ohio St.3d 73, 2007–Ohio–1104, 862 N.E.2d 816, at ¶ 28.

{¶37} R.C. 2151.353(A)(3) states, in relevant part, as follows: "If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

{¶38} "(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings. A person identified in a complaint or motion filed by a party to the proceedings as a proposed legal custodian shall be awarded legal custody of the child only if the person identified signs a statement of understanding for legal custody that contains at least the following provisions:

{¶39} "(a) That it is the intent of the person to become the legal custodian of the child and the person is able to assume legal responsibility for the care and supervision of the child;

{¶40} "(b) That the person understands that legal custody of the child in question is intended to be permanent in nature and that the person will be responsible as the custodian for the child until the child reaches the age of majority. Responsibility as custodian for the child shall continue beyond the age of majority if, at the time the child reaches the age of majority, the child is pursuing a diploma granted by the board of education or other governing authority, successful completion of the curriculum of any high school, successful completion of an individualized education program developed for the student by any high school, or an age and schooling certificate. Responsibility beyond the age of majority shall terminate when the child ceases to continuously pursue

such an education, completes such an education, or is excused from such an education under standards adopted by the state board of education, whichever occurs first.

{¶41} "(c) That the parents of the child have residual parental rights, privileges, and responsibilities, including, but not limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support;

{¶42} "(d) That the person understands that the person must be present in court for the dispositional hearing in order to affirm the person's intention to become legal custodian, to affirm that the person understands the effect of the custodianship before the court, and to answer any questions that the court or any parties to the case may have."

{¶43} As is stated above, the parties stipulated at the September 19, 2011, hearing, that the Lees would have legal custody of D.S. The only issue with respect to D.S. as to such hearing concerned visitation. It also appears, as appellant himself notes in his briefs, that appellant stipulated to the Lees having legal custody of L.S.

{¶44} Moreover, we find that the trial court's decision that it was in the best interest of L.S. and D.S. to grant legal custody to the Lees is supported by the preponderance of the evidence. Unlike in a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the standard of review in legal custody proceedings is preponderance of the evidence. *In re A.C.,* 12th Dist. No. CA2006–12–105, 2007–Ohio–3350 at ¶ 14; *In re Nice,* 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist. 2001).

**{¶45}** In this type of dispositional hearing, the focus must be the best interest of the child. *In re C.R.,* 108 Ohio St.3d 369, 2006–Ohio–1191, 843 N.E.2d 1188; *In re Nawrocki,* 5th Dist. No. 2004–CA–0028, 2004–Ohio–4208.

**{¶46}** R.C. 2151.414(D) provides factors to be considered in making a best-interest-of-the-child determination:

**{¶47}** "In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

**{¶48}** "(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

**{¶49}** "(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

**{¶50}** "(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

**{¶51}** "(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

**{¶52}** "(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶53} A trial court's determination on legal custody should not be overruled absent a showing of an abuse of discretion. *Stull v. Richland Cty. Children Services,* 5th Dist. Nos. 11CA47, 11CA48, 2012-Ohio-738. An abuse of discretion is when the trial court's judgment is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶54} Appellant, in his brief, contends that the trial court erred in relying on an unsworn letter that the Lees filed with the trial court on November 30, 2011, which was after the evidentiary hearing, and that the trial court erred in ordering the Guardian Ad Litem to file a report, but did not conduct a hearing after the report was filed. Appellant notes that he did not have a chance to cross-examine the Guardian Ad Litem or the Lees.

{¶55} However, as is stated above, at the September 19, 2011 hearing, Michelle Kelly testified that the condition of the home was unsafe for the younger children who were unable to appreciate and avoid dangerous conditions. She further testified that appellant and his wife focused on the two older children and that L.S. was fearful of her mother and older siblings. Kelly also testified that appellant and his wife minimized the sexual acting out among the older girls and that they failed to adequately address the same. Kelly also indicated that appellant and his wife were not progressing as they should have despite intensive services offered over a two year period. According to Kelly, both D.S. and L.S. improved developmentally while with the Lees.

{¶56} Based on the foregoing, and in view of appellant's stipulation, we find that the trial court did not abuse its discretion in granting legal custody to the Lees.

{¶57} Appellant also maintains that the trial court erred in ordering that visitation be supervised by the Lees and that visitation be as agreed upon by the Lees and appellant and his wife.    Decisions involving visitation rights are within the sound discretion of the trial court and, upon review, an appellate court will not disturb such a decision absent an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 541 N.E.2d 1028 (1989). The term "abuse of discretion" connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore*, supra.

{¶58} We find no abuse of discretion in the trial court's decision, based upon L.S.'s and D.S.'s best interests, to award appellant supervised, as opposed to unsupervised, visitation with the children.   There was evidence that the visits had an adverse effect on L.S., who was fearful of her family and that the family home posed a safety risk to both children. In addition, there was evidence that appellant and the Lees lived far apart.   Finally, as noted by appellee, even though the trial court closed the cases, it retained jurisdiction over D.S. and L.S. pursuant to R.C. 2151.353(E)(1) and should the Lees refuse visitation or fail to provide reasonable visitation, appellant can move the trial court to modify its disposition.   R.C. 2151.353(E)(2).

{¶59} Finally, while appellant contends that his trial counsel did not adequately protect his interests, there is nothing in the record supporting such contention.   At the conclusion of the September 19, 2011, hearing, appellant's counsel argued for increased visitation between appellant and his children.

{¶60} Based on the foregoing, the assignments of error in Case No. 12-CA-001 and 12-CA-002 are overruled.

{¶61} Accordingly, the judgment of the Holmes County Court of Common Pleas, Probate & Juvenile Divisions is affirmed.

By: Edwards, J.

Gwin, P.J. and

Farmer, J. concur

_____

_____

_____

JUDGES

JAE/d0606

[Cite as *In re L.S.*, 2012-Ohio-3794.]

IN THE COURT OF APPEALS FOR HOLMES COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: | : |
| | : |
| L.S. & D.S. | : |
| | : |
| | : |
| | : |
| | : JUDGMENT ENTRY |
| | : |
| | : |
| | : |
| | : CASE NOS. 12-CA-001 & |
| | 12-CA-002 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Holmes County Court of Common Pleas, Probate & Juvenile Divisions, is affirmed. Costs assessed to appellant, Joseph Slabaugh.

_____

_____

_____

JUDGES