[Cite as *In re X.G.*, 2018-Ohio-4890.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF: X.G. | : | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| DEPENDENT CHILD | : | Hon. Patricia A. Delaney, J. |
|  | : | Hon. Earle E. Wise, J. |
|  | : |  |
|  | : |  |
|  | : | Case No. 2018 AP 04 0015 |
|  | : |  |
|  | : |  |
|  | : | OPINION |

CHARACTER OF PROCEEDING:     Civil appeal from the Tuscarawas County
Court of Common Pleas, Juvenile Division,
Case No. 15 JN 00166

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     December 6, 2018

APPEARANCES:

For - Appellant
SETH ARKOW
1435 Market Avenue, North
Canton, OH 44714

For - Appellee
JEFF M. KIGGANS
Tuscarawas County Job & Family Services
389 16th St. SW
New Philadelphia, OH 44663

*Gwin, P.J.*

{¶1} Appellant-mother A.B. appeals the March 8, 2018 judgment entry of the Tuscarawas County Court of Common Pleas, Juvenile Division, finding it was not the best interest of X.G. to have visitation with her at this time. Appellee is the Tuscarawas County Department of Job and Family Services ("TCDJFS").

*Facts & Procedural History*

{¶2} Appellant A.B. ("Mother") is the biological mother of X.G., who was born on April 18, 2012. This case began in 2015, when X.G.'s seven-year old sibling H.W. appeared at school with a slap mark and bruising on his face, a mark on his foot, and older bruises on his back. H.W. was seen at Akron Children's Hospital where H.W.'s account of physical abuse by Mother was substantiated. Mother denied any abuse. J.G., the biological father of X.G. ("Father") took emergency custody of X.G. on May 14, 2015.

{¶3} At a shelter case hearing on June 19, 2015, the trial court granted temporary custody of X.G. to Father. Mother did not appear at the shelter care hearing.

{¶4} TCDJFS filed a complaint for abuse, neglect, and dependency against Mother and Father on June 22, 2015. On July 22, 2015, the trial court held an adjudicatory hearing. Mother and Father stipulated to the amended complaint and the trial court found X.G. was a dependent child pursuant to R.C. 2151.04. The trial court ordered X.G. to remain in the temporary custody of Father under the protective supervision of TCDJFS, with no visitation for Mother until the trial court received a report from the counselor.

{¶5} Mother filed a motion for visitation on September 16, 2015. At a review hearing on October 27, 2015, the trial court granted Mother supervised visitation.

TCDJFS filed a motion to extend for six months on May 20, 2016, which was granted by the trial court on July 5, 2016. TCDJFS filed a second motion to extend for six months on December 1, 2016, which was granted by the trial court.

{¶6} On December 15, 2016, the trial court suspended Mother's visitation because she tested positive for THC. Mother filed a motion to reconsider. The trial court denied Mother's motion to reconsider, reasoning that Mother tested positive for marijuana and opiates.

{¶7} TCDJFS filed a motion to modify disposition and terminate case. TCDJFS stated full legal custody should be given to Father and that agency involvement in the case was no longer necessary. Mother filed a motion for legal custody on June 19, 2017. The trial court awarded Mother supervised visitation on June 28, 2017.

{¶8} The trial court conducted a trial on the competing motions for legal custody on multiple dates: August 28, 2017, October 26, 2017, October 31, 2017, and December 6, 2017. On August 28, 2017, the first day of the trial, Mother tested positive for methamphetamine.

{¶9} Stacia Stevens ("Stevens"), the TCDJFS caseworker assigned to the case since 2015, testified that the first time Mother took responsibility for abusing H.W. was in August of 2016 after she denied it repeatedly for a year. Stevens was concerned about Mother's drug use since she tested positive for marijuana three times during the pendency of the case. Stevens stated she believes the agency used reasonable efforts to reunify Mother and X.G. Stevens testified that Mother has done all case plan services, but Stevens does not think Mother should get custody of X.G. because Father completed his case plan, X.G. stabilized in Father's home, and X.G. is happy and feels safe where he

is.  Stevens stated Father has taken seriously the services provided to him, he has done a fantastic job, and it is in the best interest of X.G. to be placed in Father's custody. Stevens is concerned that Mother still tests positive for drugs even though she has completed her case plan.

{¶10}  Stevens testified that Mother and Father do not get along, as it is a power struggle between them, and neither of them has a desire to come to an agreement. Stevens stated more so Mother complains about Father, but Father complains about Mother too.  Stevens does not think there is anything the agency can do to fix it.  Stevens recommended Mother continue to have supervised visitation with X.G.

{¶11}  Mother testified that she is a better parent than Father because she had X.G. his whole life, Father does not have a clean past, and she took care of X.G. perfectly. Further, that she has complied with her case plan and has not tested positive for drugs since August.  Mother stated the case was opened in 2015 because she slapped H.W. in the face, which she was previously denying.  Mother confirmed that when the children were age 2 and 7, they left the house unattended and were picked up by police.  Mother stated the supervised visitations with X.G. are paid through TCDJFS.  Mother has concerns about Father's willingness to facilitate visitation, and she does not believe Father will show up for visits when TCDJFS is not involved.  Mother does not think X.G. is safe with Father because X.G. tells her he does not want to be there, X.G. has rug burns on his forehead from throwing fits, Father has anger issues, and when they were together, Father assaulted her.  Further, Mother testified Father's new wife assaulted her in 2014.  Mother stated she is not a danger to her son and that she is a decently good parent who has always taken care of her children.

{¶12} Father testified that his concerns with Mother include her dependency issues and taking accountability. Father stated he is ok with Mother having supervised visitation with X.G., as long as she is not on drugs. Father testified that every time he and Mother engage, it ends badly. He stated he and Mother have a very strained relationship, as he does not feel X.G. is safe with her.

{¶13} Brad Klein ("Klein") supervised some of the visits between Mother and X.G. He testified that the visits between Mother and X.G. went well, and he had no concerns. Klein stated there is a lot of drama between Mother and Father, and he could tell they are not happy with each other, so he always tried to keep them separated.

{¶14} Gerrit Denheijer, the guardian ad litem for X.G., testified it is in the best interest of X.G. for Father to have legal custody and to terminate the involvement of TCDJFS. He recommends Mother have supervised visitation.

{¶15} The trial court issued a judgment entry on March 8, 2018. The trial court stated that there was a voluminous amount of information presented to the court, and that "much of it consisted of the parties presenting derogatory information about each other. A positive parental relationship does not exist between them." Further, that both Mother and Father's behaviors have not been in the best interest of X.G. The trial court found that Mother completed her case plan services and made some personal progress in her life. However, she has "maintained a very defensive approach to this case and is a long way from taking sincere responsibility for her actions that caused the removal of her children." The trial court found the personality traits that caused the removal of her children still exist and Mother does not fully grasp the negative significance of her various behaviors and sees herself as a victim of these proceedings. Further, that Mother has

internalized little from the service providers in the case, as she continues to maintain unstable relationships, did not stop using illegal drugs until well into the end of the case, and thus her relapse into drug use is very likely. The trial court determined that while Mother completed her case plan, she did not enable X.G. to return safely home.

{¶16} The trial court noted Father was honest about his parental defects and was open about prior alcohol use. Further, that he has internalized more from the service providers in the case. The trial court found X.G. is very happy in Father's home and has done incredibly well there.

{¶17} The trial court found it was in the best interest of X.G. to be placed in the legal custody of Father.

{¶18} As to visitation, the trial court stated as follows:

The Court has also given tremendous thought to the appropriate visitation between [X.G] and his mother. The Court finds it very likely that [Mother] will attempt to undermine the relationship between [Father] and his son if given the chance. Accordingly, the Court also finds that as [Mother] has been an unfit mother, it is not in the best interest of [X.G.] to have any visitation with his mother at this time.

{¶19} The trial court ordered X.G. be placed in the legal custody of Father with no visitation with Mother at this time. Further, the trial court terminated the protective supervision of TCDJFS and closed the case.

{¶20} Mother appeals the March 8, 2018 judgment entry of the Tuscarawas County Court of Common Pleas, Juvenile Division, and assigns the following as error:

**{¶21}** "I. THE TRIAL COURT ABUSED ITS DISCRETION BY SPECIFICALLY ORDERING NO VISITATION AS BETWEEN THE MINOR CHILD AND MOTHER.

**{¶22}** "II. THE TRIAL COURT ABUSED ITS DISCRETION BY FINDING MOTHER TO BE AN 'UNFIT MOTHER.'"

I.

**{¶23}** In her first assignment of error, Mother argues the trial court erred and abused its discretion in ordering no visitation as there is no credible evidence in the record to justify the denial of visitation and there is no evidence in the record that Mother would attempt to undermine the relationship between X.G. and Father.

**{¶24}** We first note that this was a grant of legal custody, not permanent custody. Legal custody does not divest parents of residual rights, privileges, and responsibilities. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188. This means Mother may petition the court for a modification of custody and/or visitation in the future. *In the Matter of L.S. & D.S.*, 5th Dist. Holmes Nos. 12-CA-001, 12-CA-002, 2012-Ohio-3794.

**{¶25}** Unlike a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the standard of review in legal custody proceedings is preponderance of the evidence. *In the Matter of L.S. & D.S.*, 5th Dist. Holmes Nos. 12-CA-001, 12-CA-002, 2012-Ohio-3794. In this type of dispositional hearing, the focus must be on the best interest of the child. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188.

**{¶26}** A trial court enjoys broad discretion in deciding matters regarding the visitation of non-residential parents. *Appleby v. Appleby*, 24 Ohio St.3d 39, 492 N.E.2d 831 (1986). However, a non-residential parent's right of visitation is a natural right and

should be denied under extraordinary circumstances, including unfitness of the noncustodial parent or a significant risk of harm to the child. *Cremeans v. Cheadle*, 5th Dist. Licking No. 07 CA 25, 2008-Ohio-2148. The standard of review concerning visitation rights is whether the trial court committed an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 541 N.E.2d 1028 (1989). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶27}** The juvenile court retains the authority to grant, limit, or eliminate visitation rights with respect to a child when crafting the final disposition of a case. In order to further a child's best interest, the trial court has the discretion to limit or restrict visitation rights. *Hurst v. Hurst*, 5th Dist. Licking No. 12-CA-70, 2013-Ohio-2674. "This includes the power to restrict the time and place of visitation, to determine the conditions under which visitation will take place, and to deny visitation rights altogether if visitation would not be in the best interest of the child." *Jannetti v. Nichol*, 7th Dist. Mahoning No. 97-CA-239, 2000 WL 652540 (May 12, 2000).

**{¶28}** Because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence. *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). The Ohio Supreme Court has also explained, "A reviewing court should not reverse a decision simply because it holds a different opinion concerning credibility of the witnesses and evidence submitted before the trial court. A finding of an error of law is a legitimate grounds for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). As

an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Id.*

{¶29} Mother argues the trial court erred in awarding her no visitation with X.G. because the witnesses that testified about visitation all testified that Mother should be granted supervised visitation. We first note that the trial court is free to accept or reject, in part or in whole, the testimony or the opinions of any witness. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

{¶30} Further, in its judgment entry, the trial court detailed the degree of hostility between Mother and Father, Mother's mentality that she is a victim of these proceedings, and Mother's focus on Father's "bad past," and determined that it is very likely that Mother will attempt to undermine the relationship between X.G. and Father if given visitation at this time.

{¶31} Stevens testified that Mother and Father do not get along, and it is a power struggle between them. Stevens stated it was more so Mother complaining about Father, but Father complains about Mother too. Stevens does not think there is anything the agency can do to fix it. Mother and Father both testified to the hostility between them. Father testified that every time he and Mother engage "it ends badly." At the supervised visits during the pendency of the case, those supervising the visits had to try to keep Mother and Father separated. As noted in the counseling assessment, Mother is focused

on what she "perceives the injustice and offense of her two sons being placed with their fathers."

**{¶32}** Additionally, in reviewing the exhibits submitted at trial, the hostility between the parties is also evident, as is the constant struggle to accommodate visitation. The parties were contacting service providers on a regular basis to express concerns about visitation and complain about the other party. Mother and Father blamed each other for missed visits and the location of the visits and distance each party had to travel for the visits was also repeatedly an issue for both Mother and Father. Mother called to complain about Father multiple times after her visitation with X.G., and her continual focus was that she did not think X.G. should be living with Father.

**{¶33}** Accordingly, we find the trial court did not abuse its discretion in finding that, once TCDJFS and the multiple services providers are no longer involved in the case, that visitation with Mother is not in X.G.'s best interest at this time. Further, although the trial court closed the case, it retains jurisdiction over X.G. pursuant to R.C. 2151.353(E)(1) and Mother may move the trial court to modify its disposition. R.C. 2151.353(E)(2).

**{¶34}** Mother's first assignment of error is overruled.

II.

**{¶35}** In her second assignment of error, Mother contends the trial court abused its discretion in finding Mother to be an "unfit mother." She argues that a determination of parental unfitness can only be made pursuant to R.C. 2151.414(E), which requires a hearing and a finding that one of the conditions in R.C. 2151.414(E)(1)-(16) exists. We disagree.

{¶36} R.C. 2151.414(E) details the requirements and determinations that must be made upon the filing of a motion for permanent custody. However, as detailed above, this is a grant of legal custody, not permanent custody. Thus, R.C. 2151.414(E) does not apply.

{¶37} Mother's second assignment of error is overruled

{¶38} Based on the foregoing, Mother's assignments of error are overruled.

{¶39} The March 8, 2018 judgment entry of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.

By Gwin, P.J.,

Delaney, J., and

Wise, Earle, J., concur