[Cite as *In re N.C.*, 2020-Ohio-6929.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


IN RE: N.C.                          :       JUDGES:
                                     :       Hon. William B. Hoffman, P.J.
                                     :       Hon. Craig R. Baldwin, J.
                                     :       Hon. Earle E. Wise, Jr., J.
                                     :
                                     :       Case Nos.  20 CA 0004
                                     :                  20 CA 0013
                                     :
                                     :       O P I N I O N



CHARACTER OF PROCEEDING:             Appeals from the Court of Common
                                     Pleas, Juvenile Division, Case No.
                                     2018 DEP 00010



JUDGMENT:                            Affirmed



DATE OF JUDGMENT:                    December 28, 2020



APPEARANCES:

For Appellant-Maternal Great-Aunt            For Appellee-Father

DARIN AVERY                                  KRISTEN E. BROWN
105 Sturges Avenue                           79 South Main Street
Mansfield, OH  44903                         Mansfield, OH  44902


For Appellant-Mother                         For Richland Cty Children's Services

GEORGE R. KEYSER                             GINA M. NENNIG
44 Park Avenue West                          731 Scholl
Suite 202                                    Suite 202
Mansfield, OH  44902                         Mansfield, OH  44902

*Wise, Earle, J.*

{¶ 1}  Appellant-maternal great-aunt, T.D., appeals the January 6, 2020 judgment entry of the Court of Common Pleas of Richland County, Ohio, Juvenile Division, granting legal custody of N.C. to appellee-father, J.C. (App. No. 20 CA 0004). Appellant-mother, A.A., appeals the same judgment entry and ruling (App. No. 20 CA 0013).   Appellee-agency, Richland County Children's Services, is also an involved party.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  On November 21, 2017, the Richland County Domestic Relations Court determined the parents of N.C, born in 2011, to be unfit to care for her.  The case was then transferred to the Juvenile Division.

{¶ 3}  On January 18, 2018, appellee-agency filed a complaint in the Juvenile Court alleging N.C. to be a dependent child.  A hearing was held on January 31, 2018. The parents admitted the child was a dependent child.  By judgment entry filed March 12, 2018, N.C. was placed in appellee-agency's temporary custody who in turn continued the child's then placement with appellee-aunt.

{¶ 4}  On May 17, 2018, appellee-agency filed a motion for disposition, seeking to terminate temporary custody and give legal custody of the child to appellee-father. On May 31, and July 11, 2018, respectively, appellant-mother and appellee-father filed motions, each requesting legal custody of N.C.  By judgment entry filed July 31, 2018, the trial court continued temporary custody of the child to appellee-agency.

{¶ 5}  On August 20, 2018, appellee-agency filed a motion for disposition, seeking to terminate temporary custody and give legal custody of the child to appellant-

mother.  By judgment entry filed August 31, 2018, the trial court continued temporary custody of the child to appellee-agency with placement to appellant-aunt.

{¶ 6}  A hearing was held on December 14, 2018.  By judgment entry filed January 3, 2019, the trial court terminated appellee-agency's temporary custody, granted legal custody to appellee-father, and granted supervised visitation to appellant-mother.  N.C. lived with her father, a minor relative, and her paternal grandmother.

{¶ 7}  Approximately a month after the hearing, N.C. revealed that she had been sexually abused by the minor relative.  Appellee-father immediately moved from the home with N.C. and contacted authorities.

{¶ 8}  On January 28, 2019, appellant-mother filed a motion to modify legal custody of the child to appellant-aunt.  Appellant-aunt was permitted to intervene in the case, and she filed a motion for temporary and legal custody on February 14, 2019.  By judgment entry filed February 26, 2019, the trial court issued an order of interim emergency custody to appellant-aunt with legal custody remaining with appellee-father.

{¶ 9}  On June 11, 2019, appellant-mother filed a motion for temporary custody of the child and motion to modify legal custody.  Appellant-mother sought reallocation of legal custody to her, alleging a change in circumstances.  On June 19, 2019, appellee-father filed a motion to terminate the interim custody to appellant-aunt and return the child to his care.  On June 20, 2019, appellee-agency filed a motion for disposition, seeking to terminate the interim custody order and return N.C. to appellee-father.

{¶ 10} Hearings were held on September 26 and 27, 2019.  During the hearing, appellant-mother withdrew her motion for legal custody.  By judgment entry filed January 6, 2019, the trial court terminated the interim custody order to appellant-aunt,

denied her motion for legal custody, granted legal custody of the child to appellee-father, and granted supervised visitation to appellant-mother.

{¶ 11} On January 8, 2020, appellant-aunt filed an appeal and assigned the following errors (App. No. 20 CA 0004):

I

{¶ 12} "THE COURT ERRED IN NOT FINDING, 'BASED ON FACTS * * * UNKNOWN TO THE COURT AT THAT TIME, THAT A CHANGE HAS OCCURRED IN THE CIRCUMSTANCES OF THE CHILD OR THE PERSON WHO WAS GRANTED LEGAL CUSTODY' UNDER R.C. 2151.42."

II

{¶ 13} "THE COURT ERRED IN FINDING THAT LEGAL CUSTODY TO THE CHILD'S FATHER SERVED THE CHILD'S BEST INTEREST AND IN DECLINING TO FIND 'THAT MODIFICATION OR TERMINATION OF THE ORDER IS NECESSARY TO SERVE THE BEST INTEREST OF THE CHILD UNDER R.C. 2151.42.' "

III

{¶ 14} "THE COURT ERRED IN MAKING NUMEROUS FINDINGS OF FACT UNSUPPORTED BY THE RECORD."

IV

{¶ 15} "THE COURT ERRED IN RELYING ON THE CASA RECOMMENDATION."

V

{¶ 16} "THE COURT ERRED IN RELYING ON R.C. 2151.41(D)(1) FACTORS IN A HEARING NOT HELD PURSUANT TO R.C. 2151.414(A), R.C. 2151.353(A)(4) OR (5), OR R.C. 2151.415(C)."

VI

{¶ 17} "THE COURT ERRED IN NOT FINDING THAT LEGAL CUSTODY TO MATERNAL GREAT-AUNT [T.D.] SERVED THE CHILD'S BEST INTEREST."

VII

{¶ 18} "THE COURT ERRED IN CONSIDERING A CASA REPORT FILED AFTER THE HEARING."

{¶ 19} On January 14, 2020, appellant-mother filed an appeal and assigned the following errors (App. No. 20 CA 0013):

I

{¶ 20} "THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT THERE WERE NO SUBSTANTIAL CHANGES IN CIRCUMSTANCES THAT WOULD NECESSITATE A CHANGE IN CUSTODY OF [N.C.]."

II

{¶ 21} "THE TRIAL COURT'S ADOPTION OF THE GAL'S FINDINGS AND RECOMMENDATIONS FROM THE REPORT SENT TO THE COURT APPROXIMATELY TWO AND ONE-HALF (2½) MONTHS AFTER THE FINAL HEARING AND WITHOUT GIVING MOTHER OR MATERNAL GREAT AUNT THE OPPORTUNITY TO QUESTION THESE FINDINGS AND RECOMMENDATIONS VIOLATES THEIR DUE PROCESS RIGHTS."

III

{¶ 22} "THE TRIAL COURT'S LIMITATION OF MOTHER'S VISITATION RIGHTS TO THE HOME OF [B.V.] OR TO THE SUPERVISION OF [T.D.] BY SIGHT OR SOUND IN MORROW COUNTY, OHIO IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

IV

{¶ 23} "THE TRIAL COURT'S FINDING THAT IS IN [N.]'S BEST INTEREST FOR HER TO BE CONTINUED IN THE LEGAL CUSTODY OF HER FATHER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS AN ABUSE OF DISCRETION."

{¶ 24} We note appellee-father filed a response brief in each case, but only addressed appellant-mother's four assignments of error.  Appellee-agency filed a response brief in appellant-mother's case only, addressing her four assignment's of error.  A response brief addressing appellant-aunt's seven assignments of error has not been filed by any party.

Appellant-Aunt I and Appellant-Mother I

{¶ 25} In appellant-aunt's and appellant-mother's first assignments of error, they claim the trial court erred in finding no change in circumstances.  We agree.

{¶ 26} R.C. 2151.42 governs modification or termination of dispositional order. Subsection (B) states the following:

An order of disposition issued under division (A)(3) of section 2151.353, division (A)(3) of section 2151.415, or section 2151.417 of the Revised Code granting legal custody of a child to a person is intended to be permanent in nature.  A court shall not modify or terminate an order granting legal custody of a child unless it finds, based on facts that have arisen since the order was issued or that were unknown to the court at that time, that a change has occurred in the circumstances of the child or

the person who was granted legal custody, and that modification or termination of the order is necessary to serve the best interest of the child.

{¶ 27} R.C. 2151.42 does not define what constitutes a "change in circumstances." R.C. 3109.04 governs modifications to parental rights and responsibilities in divorce proceedings and similarly requires a "change of circumstances" to modify a prior allocation and also does not define the phrase. In *In the Matter of: K.W. and D.S.*, 5th Dist. Guernsey No. 18 CA 34, 2019-Ohio-2121, ¶ 19, this court noted, "Ohio courts have considered a variety of factors which are relevant to the change in circumstances requirement of R.C. 3109.04(E)(1)(a), and which may be instructive in R.C. 2151.42(B) cases." (Footnote omitted.) With respect to R.C. 3109.04(E), "the phrase is intended to denote an event, occurrence, or situation which has a material *and* adverse effect upon a child." *Schiavone v. Antonelli,* 11th Dist. Trumbull No. 92-T-4794, *3 (Dec. 10, 1993). (Emphasis *sic*). A change in circumstances "must be one of substance, not slight or inconsequential." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶ 28} "In determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change." *Id.* at paragraph two of the syllabus. Accordingly, "[w]e review the trial court's determination regarding a change of circumstances for an abuse of discretion." *In re L.M.*, 2d Dist. Greene No. 2010-CA-76, 2011-Ohio-3285, at ¶ 15, citing *In re A.N.*, 2d Dist. Greene Nos. 2010 CA 83, 2011 CA 7, 2011-Ohio-2422, ¶ 21. A trial court abuses its discretion when its decision is

unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 29} On January 3, 2019, appellee-father was granted legal custody of N.C. The child lived with her father, a minor relative, and her paternal grandmother.

{¶ 30} Approximately a month after the December 2019 hearing, N.C. revealed that she had been sexually abused by the minor relative numerous times.  T. at 58-59. Appellee-father immediately moved from the home with N.C. and contacted authorities. T. at 146-147, 151, 153, 156, 303, 333-334, 383-384.

{¶ 31} In its January 6, 2019 judgment entry granting legal custody of the child to appellee-father, the trial court found the following as to a change in circumstances at Conclusion of Law No. 1:

> 1. The Court finds no substantial change in circumstances that would necessitate a change of custody.  The sexual assault of [N] is a horrific event that could not reasonably have been prevented by the father. The perpetrator had no known or recorded history of sexual assault. Father took immediate necessary action to protect [N], contact law enforcement and the RCCSB, and has cooperated in all apparent ways to address [N]'s best interests.  Father currently lives in a separate home with his paramour and infant child with all proper controls against such future abuse.  [N] has her own separate bedroom and an open play area allowing for direct adult supervision of her.  Future risk seems unlikely.

{¶ 32} We find the disclosure of sexual abuse of the child "since the order was issued or that were unknown to the court at that time" is "a change [that] has occurred in the circumstances of the child" and therefore constitutes a change of circumstances. The new revelations are "of substance, [and are] not slight or inconsequential." We find the trial court abused its discretion in not finding a change of circumstances. Normally we would remand the case for a determination on best interests after the finding of a change of circumstances, however, in this case, the trial court did not stop its analysis, but went on to decide the issue of best interests even though it was not required to do so. Therefore, a remand is not warranted and we will review the trial court's analysis on best interests.

{¶ 33} Appellant-aunt's Assignment of Error I and appellant-mother's Assignment of Error I are granted; however, the granting of these assignments do not affect the outcome.

Appellant-Aunt II, V, VI and Appellant-Mother IV

{¶ 34} In appellant-aunt's second and sixth assignments of error and appellant-mother's fourth assignment of error, they claim the trial court erred in finding the best interests of the child was to continue legal custody with appellee-father. We disagree.

{¶ 35} In appellant-aunt's fifth assignment of error, she claims the trial court relied on improper best interests factors. We disagree.

{¶ 36} At the outset, we note appellant-mother formally withdrew her motion for legal custody of the child during the second day of the hearings. T. at 403-404. During her testimony, she advocated for legal custody to appellant-aunt, and never withdrew her January 2019 motion to modify legal custody to appellant-aunt. T. at 310, 318, 323-324.

{¶ 37} In its January 6, 2019 judgment entry, the trial court found the following as to best interests at Conclusions of Law Nos. 2-4:

2. The Court concludes that it is in [N]'s best interests to return to her Father's care and custody based upon review of all relevant ORC 2151.414(D) factors. These include:

**(a) INTERACTION AND INTERRELATIONSHIP WITH THE CHILD.**

[N] enjoys a good relationship with her MGA [maternal great-aunt], but is bonded with her father. Father continues to facilitate the relationship with [N] and her half sibling;

**(b) WISHES OF CHILD.**

[N]'s wishes were expressed clearly throughout the trial testimony of the caseworker, supervisor and the GAL. [N] wants to be in her Father's custody;

**(c) CUSTODIAL HISTORY.**

[N] was placed in Father's Legal Custody on December 13, 2018. There was an "interim" legal custody placement with MGA in February, 2019, but Father has continued to enjoy regular contacts and visits throughout. No restriction of supervision, or otherwise has ever been imposed;

**(d) CHILD'S NEED FOR LEGALLY SECURE PLACEMENT.**

[N] is in the legal custody of Father who was determined to be the most suitable caregiver for her in December, 2018. [N] has expressed

and exhibited a need for finality in her living situation.  Termination of the MGA's "interim" custody order would address the child's need appropriately;

3. The Court also concludes that the stability of the MGA and her lack of transparency with the parties is concerning for [N]'s best interests. The Court concludes a lack of confidence in the MGA's ability to adequately assess [N]'s needs ability to protect her by providing proper child care and supervision;

4. The Court concludes that the GAL's recommendations are central to [N]'s Best Interests and therefore they are adopted as part of this Court's orders herein.

{¶ 38} R.C. 2151.42 does not provide criteria for a best interests determination. "However, courts have been guided by the best-interest factors in R.C. 2151.414(D)(1), which are applicable to a motion for permanent custody." *In re I.E.,* 2d Dist Montgomery No. 28646, 2020-Ohio-3477, ¶ 27; *In re C.D.Y.,* 8th Dist. Cuyahoga No. 108355, 2019-Ohio-4987, ¶ 11; *In re D.C.,* 5th Dist. Fairfield No. 13 CA 51, 2014-Ohio-286, ¶ 11.  Trial courts "may also look to the best interest factors found in R.C. 3109.04(F)(1)." *In re C.D.Y.,* at ¶ 12.  The trial court noted it considered R.C. 2151.414(D) factors as accepted by Ohio courts.

{¶ 39} We find the trial court's best interests determination to be supported in the record.  T. at 149-150, 161, 211, 218, 232, 236-237, 248-250, 253, 255-256, 332-334, 338-340, 354, 367-368, 407, 449-450, 456-458; Joint Exhibit I; Court Exhibit 1.  Of note, as soon as appellee-father was made aware of the sexual abuse, he removed N.C. from

the home and he and the child moved to another location.  T. at 151, 303.  He contacted law enforcement, the guardian ad litem, and appellee-agency.  T. at 146-147, 153, 155-156, 333-334, 383-384.

{¶ 40} The evidence indicates appellant-aunt was also a good custodian for the child.   However, the caseworker, supervisor, and guardian were concerned that appellant-aunt was not as forthcoming on several issues as she should have been.  T. at 173, 338-340, 343-344, 348, 367-368, 456-458.  During a "safe house" activity, the child was asked who she would place inside of her safe house.  T. at 139.  This activity was done on three occasions.  All three times, the child placed appellee-father in her safe house; appellant-aunt was included once.  T. at 139, 145-146, 162, 172, 386, 388-389, 420.  The caseworker opined appellee-father would be more likely to reach out to the agency if there were any concerns.  T. at 164.  The caseworker, supervisor, and guardian recommended and/or opined that the best interests of the child would best be served with legal custody to appellee-father.  T. at 155, 161, 332, 336, 408-409.

{¶ 41} Upon review, we find the trial court relied on appropriate best interests factors, and did not err in finding the best interests of the child was to continue legal custody with appellee-father.

{¶ 42} Appellant-aunt's Assignments of Error II, V, and VI and appellant-mother's Assignment of Error IV are denied.

### Appellant-Aunt III

{¶ 43} In appellant-aunt's third assignment of error, she claims the trial court erred in making numerous unsupported findings of fact.  We disagree.

{¶ 44} Out of seven listed complaints, only two pertain to findings of fact.  The remaining complaints challenge the trial court's conclusions of law.

{¶ 45} First, appellant-aunt complains that the trial court described the sexual abuse of the child as a "horrific event" as in singular, when the sexual abuse occurred numerous times (Conclusion of Law No. 1). The trial court heard ample testimony to the numerous incidents. We find the trial court used the term "event" as encompassing all of the incidents as a whole.

{¶ 46} Second, appellant-aunt challenges the trial court's finding that "the perpetrator had no known or recorded history of sexual assault" (Conclusion of Law No. 1). The points cited to support this challenge were disclosed after the incidents with the child had occurred. The parties were aware of the perpetrator's aggression toward N.C. prior to the sexual abuse, but there was no indication that the aggression was sexual in nature.

{¶ 47} Third, appellant-aunt argues the trial court erred in finding she failed to disclose an incident between N.C. and another child even though she disclosed it to N.C.'s counselor (Finding of Fact No. 21). Appellant-aunt did not disclose the incident to the agency, guardian, or appellee-father. We do not find the trial court's general finding of non-disclosure to be of consequence.

{¶ 48} Fourth, appellant-aunt argues the trial court erred in finding she failed to disclose that she and N.C. shared a bedroom (Finding of Fact No. 21). Appellant-aunt did not disclose her new living arrangements with the agency, guardian, or appellee-father. The move to a new apartment and the shared bedroom came to light after the caseworker and the guardian conducted a home visit.

{¶ 49} Fifth, appellant-aunt argues the trial court erred in concluding a lack of confidence in her ability to adequately assess the child's needs and ability to protect her by providing proper child care and supervision (Conclusion of Law No. 3). The trial

court's lack of confidence is tied to appellant-aunt's lack of transparency which is supported in the record.

{¶ 50} Sixth, appellant-aunt argues the trial court erred in concluding appellee-father took immediate steps to protect the child (Conclusion of Law No. 1).  The record supports this conclusion.  Appellee-aunt's arguments lack merit.

{¶ 51} Lastly, appellant-aunt argues the trial court erred in concluding future risk seems unlikely (Conclusion of Law No. 1).  Appellee-father testified he would do whatever was required of him to protect the child.  T. at 443-446, 459.

{¶ 52} Upon review, we find no error by the trial court regarding the complained of issues.

{¶ 53} Appellant-aunt's Assignment of Error III is denied.

Appellant-Aunt IV, VII and Appellant-Mother II

{¶ 54} In appellant-aunt's fourth assignment of error, she claims the trial court should not have placed any value on the guardian ad litem's recommendation because the guardian was not concerned about appellee-father's ability to supervise the child, and did not review all of the notes pertaining to the sexual abuse investigation.  We disagree.

{¶ 55} In appellant-aunt's seventh assignment of error and appellant-mother's second assignment of error, they claim the trial court erred in relying on the guardian's report filed on December 4, 2019, after the final hearing.  We disagree.

{¶ 56} The guardian ad litem filed a report on September 17, 2019.  Hearings were held on September 26 and 27, 2019, wherein the guardian testified and was subject to cross-examination.  The guardian then filed a subsequent report on

December 4, 2019. It is the consideration of this last report that appellants claim violate their due process rights.

{¶ 57} It is unclear whether the trial court relied on the December report. However, a review of the two reports indicates that the December report did not present any new facts or thoughts on the relevant issues than had already been included in the September report or had been testified to by the guardian, caseworker, and supervisor during the hearings. The trial court's judgment entry quoted language from the guardian's report recommending legal custody to appellee-father. This language was included on the front page of the guardian's September report.

{¶ 58} Appellants do not point to any new information in the December report that was not included in the September report or not explored during the hearings. A comparison of the two reports does not reveal any substantial additions to the December report. In her appellate brief at 12, appellee-mother argues the December report contained "disputed facts," but does not elaborate further on what those disputed facts are.

{¶ 59} "The trial court determines a guardian ad litem's credibility and the weight to be given to his/her report. The trial judge, as trier of fact, was entitled to believe or disbelieve the guardian ad litem's testimony and to consider it in the context of all the evidence before the court." *In re W.H., et al,* 3d Dist. Marion Nos. 9-16-19, 9-16-20, 9-16-21, 9-16-22, 9-16-23, 9-16-24, 9-16-25, 2016-Ohio-8206, ¶ 80.

{¶ 60} Upon review, we do not find any evidence to suggest that the trial court improperly relied on the guardian's reports.

{¶ 61} Appellant-aunt's Assignments of Error IV and VII and appellant-mother's Assignment of Error II are denied.

Appellant-Mother III

{¶ 62} In appellant-mother's third assignment of error, she claims the trial court erred in restricting her to supervised visitation.  We disagree.

{¶ 63} "A trial court enjoys broad discretion in deciding matters regarding the visitation of non-residential parents."  *In the Matter of: X.G.,* 5th Dist. Tuscarawas No. 2018 AP 04 0015, 2018-Ohio-4890, ¶ 26, citing *Appleby v. Appleby*, 24 Ohio St.3d 39, 492 N.E.2d 831 (1986); *Blakemore, supra.*  In *X.G.* at ¶ 27, this court further noted the following:

> The juvenile court retains the authority to grant, limit, or eliminate visitation rights with respect to a child when crafting the final disposition of a case.  In order to further a child's best interest, the trial court has the discretion to limit or restrict visitation rights.  *Hurst v. Hurst*, 5th Dist. Licking No. 12-CA-70, 2013-Ohio-2674.  "This includes the power to restrict the time and place of visitation, to determine the conditions under which visitation will take place, and to deny visitation rights altogether if visitation would not be in the best interest of the child."  *Jannetti v. Nichol*, 7th Dist. Mahoning No. 97-CA-239, 2000 WL 652540 (May 12, 2000).

{¶ 64} In her appellate brief at 14, appellant-mother argues "[t]here was no evidence that her visitation with [N] should be supervised," as she was no longer living with a male individual with an extensive criminal background, completed a Teen Challenge program, was receiving drug counseling, had tested negative for drugs, and was employed.

{¶ 65} At the time of the hearings, appellant-mother was under an order of restricted visitation with the child because she was dating a male individual with an extensive criminal record and he was unsafe to be around the child. T. at 209. At the time of the hearing, appellant-mother had been separated from this individual for three months. T. at 209, 307, 317-318. Appellant-aunt testified appellant-mother had a new boyfriend, but had never met him. T. at 230. Appellant-mother's drug and alcohol counselor testified while appellant-mother was on the right path to remaining clean and sober, he agreed she was still not making good choices with the men in her life (criminals). T. at 290. He did not see a problem with visitations, but "[n]ot unsupervised visitations, no." T. at 290-291. At the time of the hearings, appellant-mother did not have a residential address. T. at 306. She stated she was "[t]echnically" homeless. T. at 323. The child never placed appellant-mother in her safe house. T. at 139, 150, 316-317, 420.

{¶ 66} Upon review, we find the trial court did not abuse its discretion in restricting appellant-mother to supervised visitation.

{¶ 67} Appellant-mother's Assignment of Error III is denied.

{¶ 68} The judgment of the Court of Common Pleas of Richland County, Ohio, Juvenile Division is hereby affirmed.

By Wise, Earle, J.

Hoffman, P.J. and

Baldwin, J. concur.

EEW/db