[Cite as *In re K.W.*, 2019-Ohio-2121.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: | JUDGES:<br>Hon. William B. Hoffman, P.J |
| K.W. and D.S. | Hon. Patricia A. Delaney, J.<br>Hon. Earle E. Wise, Jr., J. |
| | Case No. 18 CA 34 |
| | O P I N IO N |
| CHARACTER OF PROCEEDINGS: | Appeal from the Guernsey County Court<br>of Common Pleas, Juvenile Division,<br>Case No. 18JC00169 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | May 28, 2019 |
| APPEARANCES: | |

| | |
|---|---|
| For Micah Crawford | For John Woods |
| LINDSEY K. DONEHUE-ANGLER<br>120 Southgate Parkway<br>Cambridge, Ohio  43725 | MICHAEL GROH<br>1938 East Wheeling Avenue<br>Cambridge, Ohio  43725 |
| For Guernsey County Children Services | For Dale Steward |
| MELISSA M. WILSON<br>274 Highland Avenue<br>Cambridge, Ohio  43725 | LYNDSAY SULLIVAN<br>P.O. Box 47<br>Bridgeport, Ohio  43912 |

*Hoffman, P.J.*

{¶1} Appellant Micah Crawford ("Mother") appeals the November 6, 2018 Journal Entry entered by the Guernsey County Court of Common Pleas, Juvenile Division, which granted legal custody of her minor child ("the Child") to appellee John Woods. Guernsey County Children Services ("GCCS") is also Appellee herein.

STATEMENT OF THE CASE AND FACTS

{¶2} GCCS became involved with the family on March 8, 2018, due to concerns about Mother's drug use. A Safety Plan was established with Neil Johnson as the responsible party. Porsah Woods subsequently became the responsible party. On April 19, 2018, GCCS received ex-parte custody of another of Mother's children as that child was consistently missing school, Porsah Woods did not know the child's whereabouts and failed to report such to GCCS, and the child was testing positive for marijuana. On April 25, 2018, Mother's paramour was arrested due to a domestic violence incident at Mother's residence. The following day, Mother reported to the caseworker her paramour refused to vacate her home, had left a bruise on her knee, and was unstable. On May 2, 2018, Porsah Woods reported to GCCS she had not seen the Child in four days, and the Child and the Child's older sibling were staying with Neil Johnson. After an incident at Neil Johnson's residence on May 2, 2018, GCCS sought and received emergency custody of the Child and the older sibling.

{¶3} On May 3, 2018, GCCS filed a Complaint alleging the Child and the older sibling were neglected and dependent children. The trial court appointed Attorney Ruth Ellen Weaver as guardian ad litem for the Child and the older sibling. John Woods, who is the older sibling's biological father, filed a motion for legal custody/temporary custody on June 20, 2018. Following an adjudicatory hearing on July 16, 2018, the trial court

found the Child and the older sibling to be dependent and neglected children.  The trial court terminated temporary custody with GCCS, and placed the Child and the older sibling in the temporary custody of Woods.

{¶4}  Attorney Weaver filed her Report of Guardian ad Litem on July 23, 2018, recommending the Child and the older sibling continue in the temporary custody of Woods under the protective supervision of GCCS.  The Court Appointed Special Advocate (CASA) filed her report on July 27, 2018, recommending the trial court terminate GCCS's protective supervision and grant legal custody of the Child and the older sibling to Woods. Via Journal Entry filed August 1, 2018, the trial court granted legal custody of the older sibling to Woods.  The older sibling became emancipated in September, 2018.

{¶5}  Attorney Weaver filed her Report of Guardian ad Litem on October 18, 2018, and a Corrected Report on October 25, 2018, which set forth the same recommendations as her July 23, 2018 Report.  The CASA filed a report on October 25, 2018, recommending the Child remain in the temporary custody of Woods.  Woods filed a Statement of Understanding for Legal Custody of the Child on October 29, 2018.  The trial court conducted a review hearing on October 29, 2018.  The trial court also heard Woods' motion for legal custody of the Child at that time.

{¶6}  Lacie James, the ongoing caseworker, testified the Child is very comfortable in Woods' home.  All of the Child's needs are being meet and she is bonded with Woods, his wife, their two sons, and the older sibling.  The Child receives appropriate medical care. Woods is able to meet all of the Child's needs. The Child and the older sibling have a close relationship, almost one of a mother and daughter.  The older sibling was the Child's caretaker prior to the removal.

**{¶7}** Mother lacked consistency in her compliance with her case plan. Mother was under the influence of methamphetamines and amphetamines during a visit with the Child on August 23, 2018. Mother repeatedly called the Child a monster. Visits were suspended until late September/early October. At a visit on October 15, 2018, Mother gave the Child, who was 2 years old, a beverage containing a five-hour energy drink in it. The Child was jittery and stayed awake for almost a full 24 hours. At a visit on October 22, 2018, Mother swore at the Child after the Child accidently splashed Kool-aid on her. Woods and his wife were willing to continue supervising visits between Mother and the Child in their home despite Mother's behavior as they did not want to break the bond between Mother and the Child.

**{¶8}** Attorney Weaver opined it was in the Child's best interest to be in Woods' custody. Attorney Weaver stated she believed the decisions as to whether reasonable efforts had been made and whether Mother was unsuitable were decisions for the trial court. The CASA reiterated her recommendation temporary custody remain with Woods and visitation continue as agreed upon by Woods and Mother. The CASA noted Mother has been working on her case plan, albiet with some setbacks, and visits with the Child were appropriate. The CASA believed Mother should be given additional time to work on her case plan.

**{¶9}** Via Journal Entry filed November 6, 2018, the trial court granted legal custody of the Child to Woods and terminated the protective supervision by GCCS. The trial court noted its decision conflicted with the recommendations of the guardian ad litem and the CASA, but indicated permanency was more important based upon the Child's age.

**{¶10}** It is from this journal entry Mother appeals, raising as her sole assignment of error:

I. THE TRIAL COURT'S DECISION WAS AN ABUSE OF DISCRETION.

**{¶11}** R.C. 2151.353(A) provides, in pertinent part:

If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

* * *

Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings.

**{¶12}** A trial court "must have wide latitude in considering all the evidence" and a custody decision will not be reversed absent an abuse of discretion. *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159, citing *Miller v. Miller,* 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). Unlike a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the standard of review in legal custody proceedings is a preponderance of the evidence. *In re A.C.,* 12th Dist. No.

CA2006–12–105, 2007–Ohio–3350 at ¶ 14; *In re Nice,* 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist. 2001). In this type of dispositional hearing, the focus is on the best interest of the child. *In re C.R.,* 108 Ohio St.3d 369, 2006–Ohio–1191, 843 N.E.2d 1188; *In re P.S.,* 5th Dist. No. 2012CA00007, 2012–Ohio–3431.

**{¶13}** As set forth in our statement of the case and facts, supra, Mother lacked consistency in her compliance with her case plan. Mother was under the influence of drugs during a visit with the Child. Mother called the Child names or swore at her. At one visit, Mother gave the Child a beverage containing a five-hour energy drink in it. The Child was jittery and stayed awake for almost a full 24 hours. Woods and his wife were willing to continue supervising visits between Mother and the Child in their home despite Mother's behavior as they did not want to break the bond between Mother and the Child. The Child is very comfortable in Woods' home. All of the Child's needs are being meet and she is bonded with Woods, his wife, their two sons, and the older sibling. The Child receives appropriate medical care. Woods is able to meet all of the Child's needs. The Child and the older sibling have a close relationship, almost one of a mother and daughter.

**{¶14}** Based upon the foregoing, we find the trial court's decision is supported by a preponderance of the evidence, and the trial court did not abuse its discretion in granting legal custody of the Child to Woods.

**{¶15}** Within this assignment of error, Mother challenges legal custody proceedings in general. Mother submits the consequence of granting legal custody is an elimination of a noncustodial biological parent's ability to move for modification of the order based upon that parent's own change of circumstances. Mother explains a trial court may grant permanent custody only under limited circumstances which are clearly

defined and occur on a clearly defined timeline, however, no such limitations are placed on a trial court's ability to grant legal custody. Mother concludes, as a result, a grant of legal custody is unreasonable and effectively disincentivizes Mother from working on her caseplan.

**{¶16}** We note legal custody does not divest parents of residual parental rights, privileges, and responsibilities. *In re C.R.,* 108 Ohio St.3d 369, 2006–Ohio–1191, 843 N.E.2d 1188 at ¶ 17. As such, a parent may petition the trial court in the future for a modification of custody. *Id.*

**{¶17}** R.C. 2151.42(B) provides:

A court shall not modify or terminate an order granting legal custody of a child unless it finds, based on facts that have arisen since the order was issued or that were unknown to the court at that time, that a change has occurred in the circumstances of the child or the person who was granted legal custody, and that modification or termination of the order is necessary to serve the best interest of the child.

**{¶18}** The change-in-circumstances requirement exists to promote stability in a child's life. *In re Brayden James*, 113 Ohio St.3d 420, 2007–Ohio–2335, 866 N.E.2d 467, ¶ 15. As the Ohio Supreme Court explained in *Davis v. Flinkinger*, supra:

The clear intent of [the change-in-circumstances requirement] is to spare children from a constant tug of war * * *. The statute is an attempt to provide some stability to the custodial status of the children, even though

[a] parent out of custody may be able to prove that he or she can provide a better environment." *Id.* at 418, quoting *Wyss v. Wyss*, 3 Ohio App.3d 412, 416, 445 N.E.2d 1153 (1982).

{¶19} Because the focus of all custody proceedings is the best interest of the child, the threshold standard is high. However, the threshold is not insurmountable. For example, a parent's entry into the child's life, when the parent was completely absent before, constitutes a change in the child's circumstances. *Matter of H.H.*, 4th Dist. Meigs App. No. 18CA6, 2018-Ohio-2636, ¶ 2. In addition, Ohio courts have considered a variety of factors which are relevant to the change in circumstances requirement of R.C. 3109.04(E)(1)(a)[1], and which may be instructive in R.C. 2151.42(B) cases. Relevant factors presented in R.C. 3109.04(E)(1)(a) cases have included "a new marriage that creates hostility by the residential parent and spouse toward the nonresidential parent, frustrating attempts at visitation," *Davis,* supra at 419; the advancement of a child from infancy to adolescence, *Perz v. Perz* (1993), 85 Ohio App.3d 374, 377, 619 N.E.2d 1094; unruly behavior of the residential parent involving the police, *Butler v. Butler* (1995), 107 Ohio App.3d 633, 669 N.E.2d 291; and fights between the residential parent and a new spouse that required police intervention, along with the fact that the residential parent had moved six times in two years, *Dedic v. Dedic*, 9th Dist. Wayne App. No. 98CA0008, (Jan. 27, 1999).

{¶20} Mother's argument presents a legitimate concern, one which we feel might best be addressed by legislation further defining what constitutes a change in

---

[1] R.C. 3109.04(E)(1)(a) applies when a trial court modifies a prior decree allocating parental rights and responsibilities and designating a residential parent and legal custodian and sets forth the same "change of circumstances" standard for a modification.

circumstances when a legal custody determination originates from an abuse, neglect or dependency case.

**{¶21}** Based upon the foregoing, Mother's sole assignment of error is overruled.

**{¶22}** The judgment of the Guernsey County Court of Common Pleas, Juvenile Division, is granted.


By: Hoffman, P.J.

Delaney, J. and

Wise, Earle, J. concur