[Cite as *In re E.S.*, 2023-Ohio-1009.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN RE: E.S., | : | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| DEPENDENT CHILD | : | Hon. John W. Wise, J. |
|  | : | Hon Andrew J. King, J. |
|  | : |  |
|  | : |  |
|  | : | Case No. 2022 CA 0064 |
|  | : |  |
|  | : |  |
|  | : | OPINION |

CHARACTER OF PROCEEDING: Civil appeal from the Richland County Court of Common Pleas, Juvenile Division, Case No. 2019-DEP-00051

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: March 28, 2023

APPEARANCES:

For Plaintiff-Appellees

BENJAMIN D. KITZLER
3 North Main St., Ste., 803
Mansfield, OH 44902

For Defendant-Appellants

DARIN AVERY
105 Sturges Ave.
Mansfield, OH 44903

*Gwin, P.J.*

{¶1} Appellants C.J. and T.J. ("Custodians") appeal the August 22, 2022 judgment entry of the Richland County Court of Common Pleas, Juvenile Division, ruling on their objections to the magistrate's decision.

*Facts & Procedural History*

{¶2} In 2019, Richland County Children Services ("RCCS") filed a complaint alleging E.S., born on April 30, 2018, was a dependent and neglected child due to the drug use of both of her parents. Appellee R.S. is the mother ("Mother") of E.S. and appellee D.S. is the father ("Father") of E.S. Upon motion by RCCS, temporary custody of E.S. was given to her maternal great-aunt, C.J.

{¶3} On June 5, 2019, the magistrate issued an order finding E.S. to be a dependent and neglected child. The trial court adopted and approved the magistrate's order on June 25, 2019. RCCS filed a motion for disposition on November 5, 2019, requesting the trial court grant legal custody of E.S. to C.J. and her husband T.J. Father filed a motion requesting visitation on January 13, 2020. On February 12, 2020, the magistrate issued a decision granting RCCS' motion for legal custody to Custodians and denying Father's motion for visitation. Custodians each signed a "Statement of Understanding for Legal Custody," which provides, in part, "I understand that the parents of the child have residual parental rights, privileges, and responsibilities, including, but not limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support."

{¶4} On July 12, 2021, Mother and Father filed a motion for parenting time. The trial court set the matter for hearing on August 18, 2021. On August 17, 2021, Attorney

Beth Allen Owens filed a notice of appearance notifying the trial court she was representing Custodians. Also, on August 17th, Custodians filed a motion to continue the August 18th hearing due to a conflict in their attorney's schedule. The trial court granted the motion, and rescheduled the hearing for August 30, 2021. Several minutes prior to the scheduled August 30th hearing, Custodians filed a motion to stay the proceedings pending a decision by the Richland County Probate Court on an adoption petition they filed with regards to E.S.

{¶5} In an order issued by the magistrate after the August 30th hearing, the magistrate ordered the parties to brief the issue of whether the case should be stayed due to the filing of the adoption petition. The magistrate held additional hearings on October 12, 2021 and December 8, 2021.

{¶6} During the hearing on December 8, 2021, the magistrate noted the court learned that Custodians moved out of state because a notice sent to Custodians' address in Ohio was returned to the court stating their forwarding address was in Tennessee. The magistrate asked Custodians if they wanted to share anything with the court about their relocation to Tennessee. T.J. stated, "when we decided to move uh, of course, we wanted to adopt." T.J. noted he wanted to move to Tennessee to help his parents and start a business. T.J. stated they spoke with E.S.'s counselors, who felt it would be a good thing for E.S. to have some "distance" from her parents due to the adoption. T.J. stated E.S. was doing very well in Tennessee. When the magistrate inquired as to whether Custodians intended to return back to Ohio, T.J. stated, "we didn't before. No, we were planning on trying to build a life, 'cause we were planning to adopt and move forward with our lives with E.S." The court asked Custodians for an address at which to serve them

with the notice for the next hearing, and they provided an address in Tennessee. Also, during the December hearing, counsel for Custodians made an oral motion to withdraw as their counsel, noting a breakdown in the attorney-client relationship. Custodians informed the magistrate they would be hiring new counsel.

{¶7} In an order issued on December 9, 2021, the magistrate found Custodians' motion to stay proceedings moot because the Richland County Probate Court denied their adoption petition. The magistrate issued an interim order of visitation for Mother and Father for no less than once a month, supervised by E.S.'s paternal grandmother.

{¶8} Attorney Owens filed a written motion to withdraw as counsel for Custodians on December 16, 2021. Attorney Kristin Brown filed a notice of appearance for Custodians on December 20, 2021. Also, on December 20, 2021, Mother and Father filed a motion to amend disposition and grant them legal custody, alleging a change of circumstances. The court set the motion for hearing on January 20, 2022. Because Custodians objected to Mother and Father's motion, the magistrate set the motion for an additional pre-trial on February 28, 2022. The magistrate also granted Mother and Father weekly visitation with E.S. at Bridges for Better Living.

{¶9} In a magistrate's order issued after the February 28th pre-trial, the magistrate stated she "heard a report regarding the status of visits between the child and her parents as supervised at Bridges for Better Living." The visits were going well, but "concerns about the conduct of the child's legal custodian[s] were expressed by the visitation supervisors and by the child's counselor." Also, at the February 28th pre-trial, the magistrate set a full day contested dispositional hearing for May 12, 2022. Both parties requested a hearing as soon as possible on the issue of visitation, so the court

set a visitation hearing for March 10, 2022. Formal notice of both hearings was sent to the parties on March 2, 2022.

**{¶10}** A magistrate's order dated March 11, 2022 states that the court held the hearing on March 10, 2022, and took testimony from E.S.'s counselor and an employee at Bridges for Better Living. After hearing this testimony, the magistrate granted Mother and Father visitation with E.S. every Saturday from 2:00 p.m. until 6:00 p.m. The magistrate again noted the full-day dispositional hearing would be held on May 12, 2022.

**{¶11}** On April 25, 2022, Custodians filed an ex parte motion to suspend parenting time. On the same day, Attorney Brown filed a motion to withdraw as counsel of record for Custodians due to a breakdown in the attorney-client relationship. In the motion to withdraw, Attorney Brown stated, "client[s] have been notified of the following court date: Motion to Amend Disposition on 5/12/22 at 9:00 a.m." The magistrate denied Custodians' ex parte motion to suspend parenting time. The magistrate also issued an order on April 28, 2022 granting Attorney Brown's motion to withdraw. The magistrate noted that Custodians consented to the motion. The order also specifically provides that the "matter will proceed to a contested evidentiary hearing as scheduled on Thursday, May 12, 2022 at 9:00 a.m."

**{¶12}** On May 10, 2022 at 3:39 p.m., Attorney Avery entered a notice of appearance for Custodians. Simultaneously, counsel filed a motion for continuance of the May 12th hearing to review the record, issue any necessary subpoenas, and prepare for the hearing. Attorney Avery noted that Custodians retained him on May 10, 2022. The trial court denied the motion on May 11, 2022, finding there was not good cause for the motion, and finding the motion did not comply with Local Rule 10.

{¶13} The magistrate held a trial on Mother and Father's motion to amend disposition on May 12, 2022.

{¶14} Kim Ramey ("Ramey") is Mother's counselor. Mother has been compliant with counseling. Ramey does not have any concerns about Mother's ability to parent E.S. Ramey testified Mother is able to provide stability, is working, and is able to provide stable housing for E.S. Mother currently takes Subutex for medically assisted treatment.

{¶15} Kenny Graves ("Graves") is Father's counselor. Graves testified Father is doing very well, and having negative drug screens. Father has had relapses before, but is currently on buprenorphine to relieve withdrawal symptoms, and has done well since starting his recovery in 2018. Graves was aware that, approximately one month before the hearing, Father was found with a syringe in his car. Graves believed Father's explanation and does not believe Father relapsed because his urine screens are still negative.

{¶16} Kim Olivieri ("Olivieri") supervised two visits between E.S. and her parents. Olivieri felt the visits went well, and E.S. is bonded to her parents. E.S. told Olivieri that C.J. told E.S. she could not play with Mother and Father. Olivieri heard E.S. tell Mother and Father that C.J. threw away the items they brought her at the visitation the previous week. Olivieri testified E.S. enjoyed her visits with Mother and Father, but believed E.S. was not allowed to share that information with Custodians.

{¶17} Gail Lucanegro ("Lucanegro") is a probation officer with Richland County. Both Mother and Father were on intensive supervision step-down probation under her supervision from June 30, 2021 through March 11, 2022. Prior to June of 2021, Mother completed treatment at an inpatient facility. From June of 2021 through March of 2022,

both Mother and Father were compliant with their probation. Neither of them had any warnings, sanctions, or violations. Lucanegro randomly drug-tested both parents. Mother drug-tested negative 11 times and Father drug-tested negative 20 times. Mother is on probation for an attempted illegal conveyance charge and possession of drugs charge. Father is on probation for a possession of drug charge.

{¶18} Jay Sheriff ("Sheriff") is a probation officer with Richland County and is the current probation officer for Mother and Father. He has had no problems with either Mother or Father. Neither have had any sanctions. Mother and Father came to Sheriff's office after Father was involved in a traffic stop where a syringe was found in his car. Sheriff drug-tested both of them. They tested positive for their prescription drugs, but negative for any other drugs. Father also submitted a hair follicle drug test, which was negative. Sheriff believed what Father told him about the incident.

{¶19} Jo Ann Howard ("Howard") is the guardian ad litem for E.S. Howard believes Mother and Father are totally different people from when the case began. She has seen only "positive results in interactions with them and [E.S.]." Howard testified E.S. is bonded with them. Howard was concerned with the one supervised visit she did attend because, several times during the visit, E.S. approached the supervisor and told her, "please don't tell C.J. how well I played today." When Howard met with E.S. in March of 2022, C.J. was on the back porch, while Howard and E.S. were at the kitchen table. Before E.S. would answer any questions about Mother or Father, E.S. would look out the window to the back porch and make sure C.J. could not see or hear her answers.

{¶20} Howard testified it is in E.S.'s best interest to be back in the custody of Mother and Father. Based upon her interaction with Mother and Father, and the

information she obtained from the parents' counselors and probation officers, Howard believes Mother and Father are able to provide a stable and safe home for E.S.

{¶21} When Howard was re-appointed to the case in October of 2021, C.J. called her. Howard asked if they still lived at the same home, and C.J. told Howard they lived in Tennessee. Howard is not aware of any issues at Custodians' home. E.S. is bonded with Custodians and they provide for her basic needs. C.J. asked Howard to visit E.S. soon after E.S. had visitation with Mother and Father because C.J. reported E.S.'s behaviors were bad after visiting with Mother and Father. Howard did visit several days after E.S.'s visit with Mother and Father, and noticed no bad behavior from E.S.

{¶22} Upon questioning from the court, Howard stated Custodians currently live in a remodeled basement. C.J. told Howard they were living there while she recovered from foot surgery, but then were going back to Tennessee. Custodians were adamant in telling Howard that, despite the statement of understanding they signed, visits with Mother and Father were not in E.S.'s best interest. Thus, they stopped the visits. Howard testified that while C.J. now states they did not stop the visits, C.J. previously told her the reason the visits were stopped is because C.J. did not want Mother and Father being called "mommy and daddy" by E.S. because E.S.'s counselor felt it was too confusing for E.S. to have two mommies and two daddies. However, when Howard contacted E.S.'s counselor, the counselor stated it would be confusing, but never at any time did the counselor suggest the visitation be stopped. Howard believes increased, regular, and consistent contact with her parents was not harmful to E.S. Howard was aware of a visit at a McDonald's Playland in June or July of 2021. After that, the parents attempted to contact C.J. to set up further visitation, but she would not return their calls or texts.

**{¶23}** At the conclusion of Mother and Father's case, Attorney Avery stated he intended to call Custodians, Kathy Crawford, Joseph Clark, and Brenda Marti, even though these names were not provided to opposing counsel. Attorney Avery confirmed he met with Custodians prior to the hearing, and took the case knowing the matter was set for trial. Counsel for Mother and Father objected to the witnesses. The magistrate overruled the objections, and let the witnesses testify. Prior to a lunch break, the magistrate ordered a separation of witnesses, and told Custodians they could not communicate with any of the witnesses about their upcoming testimony.

**{¶24}** When the trial resumed after lunch, Howard informed the court that she personally observed Kathy Crawford discussing with Custodians "what she was to say on the stand." The magistrate ruled that since Custodians did not comply with the admonition about the separation of witnesses, Kathy Crawford would not be able to testify. Counsel for Custodians moved for a directed verdict due to no evidence of changed circumstances. The magistrate denied the motion.

**{¶25}** Brenda Marti ("Marti") lives upstairs in the home where Custodians live. Custodians moved into the home in October of 2021. She owns the building, and they pay rent. The portion where Custodians live has a large bedroom, a play area, a kitchenette, and a back porch. Marti testified T.J. went to Tennessee for work, and C.J. went to visit for a week. Marti has heard E.S. have nightmares soon after her visits with Mother and Father. E.S. would also hit and scream. Marti stated E.S. did not exhibit these behaviors prior to the visits starting with Mother and Father.

**{¶26}** E.S. was seven months old when she came into Custodians' home. T.J. testified the legal statement of understanding states that visitation was at their discretion.

Following the grant of legal custody, E.S. did not immediately have visitation with Mother and Father. Starting in April of 2020, they allowed Mother and Father to visit E.S. at their home at Mother and Father's request. T.J. testified the visits never went badly, and usually lasted between one and three hours. T.J. stated the interactions during the visits was not the problem, but after the visits, E.S. would have nightmares and meltdowns. Due to these meltdowns, Custodians took E.S. to counseling. On cross-examination, T.J. confirmed that, from April of 2020 through June of 2021, they allowed Mother and Father twenty-four separate visits. While they were allowing these visits, Custodians were considering adoption, and their attorney advised them that more distance between E.S. and Mother and Father would be best.

{¶27} In June of 2021, Custodians sought alternate housing. T.J. spoke to his parents and they had a cabin on their property Custodians could use while the adoption process was going on. T.J. testified they "started moving some necessities in life in September." T.J. stated he was back and forth to Tennessee, but C.J. and E.S. remained in Ohio and only went to Tennessee for a week. T.J. put a deposit down for electric and gas on the property in Tennessee.

{¶28} Counsel for Custodians called Father on cross-examination. As to the incident where he got pulled over in April of 2022, Father stated his uncle overdosed in August of 2021. After his uncle died, Mother and Father moved into his uncle's house. They fixed up the house, but there was still quite a bit of stuff in the house. When cleaning a cupboard, Father found a syringe, a tie, and a spoon in a little case. He did not want to throw it in the trash because his children live in the house. Father testified he put it in his car and intended to throw it in the dumpster at his work. He forgot to throw it away at

work, and got pulled over on his way home from work. When Father was pulled over, Father got a hair follicle drug test he paid for out-of-pocket. Father testified he works at Edge Plastics and Mother works at Motel 6.

{¶29} The magistrate issued a decision on May 17, 2022, with detailed findings of fact and conclusions of law. The magistrate found a change in circumstances pursuant to R.C. 2151.42(B) due to the combination of Custodians' relocation to Tennessee, Custodians' quest to adopt E.S. without parental consent, and Custodians' abrupt termination of contact between E.S. and her parents. The magistrate additionally issued the following findings of fact: the court was not provided with any credible evidence to establish E.S.'s behaviors, if any, after visits with Mother and Father are directly related to the visitation; Custodians' did not attempt to have any court intervention, but unilaterally decided to pursue adoption and stop visits with Mother and Father; Custodians put down a deposit for electric and gas at the property located at the address T.J. relayed to the court on the December 8, 2021 hearing; Custodians reported to Howard that they had relocated to Tennessee and were temporarily staying in the basement of their friends and planned to return to Tennessee after C.J. underwent foot surgery; E.S. has relayed other details about Tennessee which demonstrates she has spent more time in Tennessee than one week as testified to by T.J.; Mother and Father have maintained their sobriety for three years and passed all drug screens; Mother and Father are compliant with the terms of their probation; Howard perceives that E.S. is unable to express open love and affection for Mother and Father due to the worry it will hurt the feelings of C.J.; and Howard recommends E.S. be placed in the legal custody of her biological parents.

{¶30} In the decision portion of the entry, the magistrate found it was in the best interest of E.S. to terminate the legal custody of Custodians and for E.S. to be placed in the legal custody of Mother and Father. The magistrate found there was a change in circumstances because Custodians sought to eliminate the presence of Mother and Father from E.S.'s life by prohibiting them from visiting, by filing a petition for adoption, and by moving to Tennessee. The magistrate specifically found Custodians' denial that they moved to Tennessee not credible based upon the direct representations to the court at the December 8th hearing, their communication to Howard about their move, and E.S's communications. The magistrate stated Custodians attempted to sever a bond between E.S. and her parents, which was not in E.S.'s best interest.

{¶31} The magistrate ordered E.S. to immediately be transferred to the home of her parents, and, pursuant to Juvenile Rule 40(D), the decision was effective immediately. The trial court issued a judgment entry approving and adopting the magistrate's decision on May 20, 2022.

{¶32} Custodians filed objections to the magistrate's decision on May 26, 2022. Custodians argued as follows: the magistrate erred in finding Custodians moved; the magistrate erred in finding a change in circumstances; and the magistrate erred in finding that termination of legal custody was in the best interest of the child. Custodians also filed a motion to set aside the magistrate's order because the document is not identified as an order in the caption, a magistrate cannot dispose of a claim, the order cannot be effective immediately, and the order was not in the best interest of the child. Custodians filed supplemental objections on July 26, 2022. They argued: the magistrate erred in finding Custodians' exercise of discretion created a change in circumstances; the

magistrate erred in finding a change in circumstances due to moving; the magistrate erred in implying that Custodians had to seek court intervention to change visits with the parents; the magistrate erred in giving any weight to the child's expression of happiness at being with her parents; the magistrate erred in finding the child's meltdowns are due to the actions of Custodians; the magistrate erred in finding it was in the child's best interest to return to the custody of her parents, and the magistrate erred in finding Custodians violated the terms of legal custody.

{¶33} The trial court issued a judgment entry on August 22, 2022. The trial court determined as follows: Custodians' assertion that they did not move is contradicted by the testimony; a change in physical residence coupled with other factors may be the basis for a change in circumstances; terminating visits was a significant change in circumstances in addition to the move; Custodians did not have the discretion to terminate visitation when visitation had been occurring regularly, absent a best interest basis for doing so; the change in circumstances finding in the magistrate's order filed on December 9, 2021 justified the interim order of visitation; the change in circumstances is not based exclusively on an attempt to eliminate the parents from the child's life, but upon termination of visits with other factors; despite knowing the terms of the Statement of Understanding that Custodians signed, and they acted to nullify the residual rights of the parents.

{¶34} Upon consideration of the supplemental objections, the trial court found: the prior court order says "parenting time shall be at the nature, frequency, and discretion of legal custodians, and as they determine to be in the child's best interests"; this order cannot be construed to override the Court's authority to determine whether Custodians

acted in the best interests of the child; Custodians terminated visits without evidence doing so was in the child's best interests; terminating regularly occurring visits is an event that had a material or adverse effect upon the child; the findings by the magistrate regarding best interest are supported by the transcript; an "adverse effect on a child" for purpose of change of circumstances was proven; leaving the terms of visitation within Custodians' discretion does not equate to the court relinquishing authority to determine what is in the child's best interest; the prior legal custody order does not divest the court of jurisdiction; the primary credible concern with the child's mental state involved her feeling conflicted between her parents and keeping C.J. happy; and the child is closely bonded to her parents who have satisfactorily dealt with their prior issues. The trial court overruled Custodians' motion to set aside, objections, and supplemental objections, with the exception of Item 3 of the motion to set aside (regarding the automatic stay of Juv.R. 40(D)(4)(e)).

**{¶35}** Custodians appeal the August 22, 2022 judgment entry of the Richland County Court of Common Pleas, Juvenile Division, and assign the following as error:

**{¶36}** "I. THE TRIAL COURT MADE NUMEROUS FINDINGS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶37}** "II. THE TRIAL COURT ERRED IN FINDING A CHANGE IN CIRCUMSTANCES OF THE MINOR CHILD.

**{¶38}** "III. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A DIRECTED VERDICT.

**{¶39}** "IV. THE TRIAL COURT ERRED IN FINDING THAT A GRANT OF LEGAL CUSTODY TO THE PARENTS SERVED THE CHILD'S BEST INTERESTS.

**{¶40}** "V. THE TRIAL COURT ERRED IN MISAPPLYING JUVENILE RULE 40."

I.

**{¶41}** In their first assignment of error, Custodians contend the trial court "made numerous findings against the manifest weight of the evidence." Custodians list ten findings they allege are against the manifest weight of the evidence.

**{¶42}** A trial court "must have wide latitude in considering all the evidence" and a custody decision will not be reversed absent an abuse of discretion. *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997), citing *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the finder of fact could base its judgment. *Cross Truck Equip. Co. v. The Joseph A. Jeffries Co.*, 5th Dist. Stark No. CA5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent and credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶43}** Unlike in a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the standard of review in legal custody proceedings is a preponderance of the evidence. *In re S.D.*, 5th Dist. Stark Nos. 2013CA0081, 2013CA0082, 2013-Ohio-5752.

**{¶44}** Issues relating to the credibility of the witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility "is

crucial in a child custody case, where there may be as much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

{¶45} In their first, fifth, and sixth items, Custodians contend these findings made by the trial court are against the manifest weight of the evidence:  "[Custodians] lacked sufficient reason bearing on best interests to terminate visitation; [Custodians] exercised their discretion by terminating visits without evidence that doing so was in the child's best interests; and terminating regularly occurring visits without good cause represents an abuse of discretion by [Custodians] because it was contrary to the child's best interests and constituted a change in circumstances of the child."  Custodians argue they reasonably relied on the opinions of the child's counselor and their attorney before stopping visits or attempting to adopt.  As discussed below in Custodians' separate assignments of error regarding change in circumstances and best interest, Custodians did not elicit or attempt to elicit the testimony of the counselor or the lawyer.  Howard spoke directly to the counselor, who informed Howard she did not suggest terminating visitation.  Upon review of the record and for the reasons set forth in Custodians' second and fourth assignments of error, we find there was competent and credible evidence to support the trial court's determinations.

{¶46} Second, Custodians argue the trial court's finding that "E.S. had obvious conflict between her desire to remain in the good graces of and to please C.J. and her longing to enjoy her interaction with her parents and to openly express her affection toward them," was against the manifest weight of the evidence because this "obvious conflict" was "conjured from testimony" that E.S. had been prohibited from singing a

certain song; and the trial court made an erroneous finding by reading too much into this testimony. Both Howard and Olivieri testified to the conflict E.S. felt between having fun with her parents and upsetting C.J. Accordingly, there is competent and credible evidence to support the trial court's determination.

{¶47} In their third and seventh items, Custodians contend the trial court's findings that "up until June or July of 2021, E.S. had been regularly visiting with her parents and was closely attached to them" and "[Custodians] acted contrary to the child's best interest by acting in a way that predictably upset the child and her relationship with her parents" were against the manifest weight of the evidence. Custodians contend parents' visitation prior to June or July of 2021 was not "regular," so Custodians could not have upset the child when discontinuing the visits because the visits were not consistent. The term "regular" is defined as "recurring, attending, or functioning at fixed, uniform, or normal intervals," https://www.merriam-webster.com/dictoinary/regular (accessed March 15, 2023) and "usual, normal, or customary, as opposed to an occasional, special, or incidental use." Black's Law Dictionary (11th ed. 2019). T.J.'s testimony demonstrates that parents' visits with E.S. occurred at normal and customary intervals and not just occasionally. T.J. testified that, from April 20, 2020 through June of 2021, Mother and Father had twenty-four separate visits with E.S. at Custodians' home, and these visits occurred approximately every two or three weeks for several hours. Accordingly, we find the trial court's determinations are supported by competent and credible evidence.

{¶48} Fourth, Custodians argue the trial court's finding that "legal custodians attempted to eliminate her parents from her life, thereby creating an emotional conflict within the child that did not previously exist," was against the manifest weight of the

evidence. Custodians contend Ohio law permits them to file an adoption petition, and the trial court permitted Custodians to determine what type of visitation with parents was in E.S.'s best interest. Custodians argue the magistrate and trial court were not permitted to rely only on the testimony of Howard and Olivieri. As discussed below, even though the trial court previously permitted Custodians to determine how much visitation was appropriate between E.S. and her parents, the statutory scheme permits Mother and Father to petition, and the trial court to grant under certain circumstances, a modification of visitation and/or change in legal custody. As to Howard and Olivieri's testimony, as an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. The trial court is free to believe all, part, or none of the testimony of each witness. *State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). We find there is competent and credible evidence to support the trial court's determination.

**{¶49}** In their eighth item, Custodians contend the trial court committed error in finding the magistrate's findings regarding the best interest of E.S. are supported by the record. Custodians argue the magistrate did not make appropriate findings with regard to the best interest factors, and the findings she did make apply equally to Custodians. Custodians have made the same argument in their fourth assignment of error. Based upon our analysis in Custodians' fourth assignment of error, we find this argument to be not well-taken.

**{¶50}** Ninth, Custodians contend the trial court committed error in "reasonably concluding" E.S.'s "meltdowns" are attributable to the stress of pleasing C.J. Custodians assert the only testimony elicited at trial about E.S.'s behavior after visits was from T.J., who described how the "meltdowns" were attributable to visits with Mother and Father.

We find the trial court's determination is not against the manifest weight of the evidence. Howard testified that C.J. asked her to visit E.S. soon after E.S. had a visit with Mother and Father because E.S.'s behaviors were allegedly bad after visiting with her parents. Howard visited several days after E.S.'s visit with Mother and Father, and noticed no bad behavior from E.S. Howard testified E.S.'s emotional turmoil is attributable to the actions of Custodians. The trial court is free to believe all, part, or none of the testimony of each witness. *State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).

{¶51} In their tenth item, Custodians argue the trial court's finding that Mother and Father demonstrated an adverse effect on E.S. for purposes of establishing a change in circumstances was against the manifest weight of the evidence. As detailed in our analysis in Custodians' second assignment of error, Howard and Olivieri testified to the adverse effect Custodians' actions had on E.S. We defer to the trial court on matters of credibility. *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

II.

{¶52} In their second assignment of error, Custodians argue the trial court committed error in finding a change in circumstances.

{¶53} In the first portion of this assignment of error, Custodians contend that once the trial court issued the March 20, 2020 judgment entry granting them the authority to grant or deny visitation, this decision is res judicata, and the court cannot change its determination. We disagree.

{¶54} Legal custody awarded pursuant to R.C. 2151.353(A) does not cut off all rights of the parents. Legal custody is subject to the continuing jurisdiction of the juvenile court, and may be terminated by that court. *In re J.T.F.*, 2nd Dist. Greene No. 12-CA-03,

2012-Ohio-2105. The juvenile court previously adjudicated E.S. as a dependent child. As a result of that adjudication, the juvenile court retains jurisdiction over E.S. until she reaches the age of eighteen pursuant to R.C. 2151.353(F)(1). Simply because the juvenile court initially granted legal custody to Custodians and permitted them to determine what amount of visitation with Mother and Father was in E.S.'s best interest does not mean the court cannot modify that determination. In the exercise of continuing jurisdiction, the trial court is permitted to change the legal custody order it entered. *In re L.H.*, 5th Dist. Muskingum No. CT2013-0017, 2013-Ohio-5279; *In re J.L.M.*, 9th Dist. Summit No. 28867, 2018-Ohio-2175. R.C. 2151.42 recognizes the propriety of modifications or terminations of prior dispositional orders and sets out what the juvenile court must find to modify or terminate, i.e., a change in circumstances finding and a best interest finding. *In re F.D.*, 9th Dist. Summit No. 30410, 2023-Ohio-706.

{¶55} Custodians contend they reasonably relied on the opinions and advice of their lawyer and counselor in taking their actions regarding visitation, moving, and adoption. We first note that neither the lawyer or counselor at issue were witnesses or proposed witnesses at the trial. Further, the testimony about the alleged reliance on the opinions of the lawyer and counselor came solely from T.J. T.J. testified E.S.'s counselor stated it was too confusing for E.S. to have two mom's and two dad's and the counselor recommended visitation with Mother and Father be stopped. However, Howard testified that she personally contacted the counselor and, while the counselor did state it was confusing for a child to have two mothers and two fathers, "never at any time did she suggest the visitation [with Mother and Father] be stopped." It is well-established that the trial court, as the fact finder, is free to believe all, part, or none of the testimony of each

witness. *State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. Jackson 1992).

{¶56} Custodians also cite caselaw in support of their argument that relocation by itself is not a change in circumstances. Custodians are correct in their assertion that relocation, by itself, is not a change in circumstances. This Court has held the general rule is that relocation, by itself, is not sufficient to be considered a change of circumstances, but it is a factor in such a determination. *Davis v. Davis*, 5th Dist. Tuscarawas No. 2016 AP 05 0031, 2016-Ohio-7205. However, in this case, the magistrate and trial judge did not find a change in circumstances due to relocation alone. Rather, relocation was a factor in the change of circumstances determination, along with other factors such as the termination of visits, and the intent to eliminate the parents from E.S.'s life. Accordingly, the trial court did not improperly base its decision solely on the move to Tennessee.

{¶57} Finally, Custodians generally contend the trial court committed error in finding a change in circumstances. R.C. 2151.42 governs the modification of termination of dispositional orders. Section 2151.42(B) states the following, "an order of disposition * * * granting legal custody of a child to a person is intended to be permanent in nature. A court shall not modify or terminate an order granting legal custody of a child unless it finds, based on facts that have arisen since the order was issued * * * that a change has occurred in the circumstances of the child or the person who was granted legal custody * * *."

{¶58} R.C. 2151.42 does not define what constitutes a change in circumstance. R.C. 3109.04 governs modification to parental rights and responsibilities in divorce

proceedings and similarly requires a change of circumstances to modify a prior allocation and also does not define the phrase. *In the Matter of K.W.*, 5th Dist. Guernsey No. 18 CA 34, 2019-Ohio-2121. This Court has noted, "Ohio courts have considered a variety of factors which are relevant to the change in circumstances requirement of R.C. 3109.04(E)(1)(a), and which may be instructive in R.C. 2151.42(B) cases." With respect to R.C. 3109.04(E)(1)(a), "the phrase is intended to denote an event, occurrence, or situation which has a material and adverse effect upon a child." A change in circumstances "must be one of substance, not slight or inconsequential." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). "In determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change." *Id.*

{¶59} Accordingly, we review the trial court's determination regarding a change of circumstances for an abuse of discretion. A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶60} Because the focus of all custody proceeding is the best interest of the child, the threshold standard is high. *In the Matter of K.W.*, 5th Dist. Guernsey No. 18 CA 34, 2019-Ohio-2121. However, the threshold is not insurmountable. *Id.* For example, a parent's entry into a child's life, when the parent was previously absent, constitutes a change in a child's circumstances. *In the Matter of H.H.*, 4th Dist. Meigs No. 18CA6, 2018-Ohio-2636. In addition, Ohio courts have considered a variety of factors which are relevant to the change in circumstances requirements. *In the Matter of K.W.,* 5th Dist.

Guernsey No. 18 CA 34, 2019-Ohio-2121. Relevant factors in previous cases have included a new marriage, frustration of attempts at visitation, the advancement of child from infancy to adolescence, unruly behavior involving the police, and the moving of the residential parent combined with other factors. *Id.*

{¶61} Upon review of the record, we find the trial court did not abuse its discretion in finding a change of circumstances in E.S.'s life due to the combination of the change in physical residence of E.S. from Ohio to Tennessee by Custodians, the termination of visits between Mother and Father when previously they had consistent visitation with E.S., and the attempt by Custodians to eliminate Mother and Father from E.S.'s life despite their acknowledgment of the rights of the parents in the "Statement of Understanding." The trial court found these factors combined to create a situation that had a material and adverse effect upon E.S. We find no abuse of discretion in this determination. Howard testified that E.S.'s emotional well-being was in constant turmoil to Custodians' actions. Custodians' argue the magistrate and trial court should have believed the testimony of their witnesses rather than the testimony of Howard and Olivieri. However, we defer to the trial court on matters of credibility, particularly in child custody cases "where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). Further, the trial court is free to believe all, part, or none of the testimony of each witness. *State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).

{¶62} Custodians' second assignment of error is overruled.

III.

**{¶63}** In their third assignment of error, Custodians argue the trial court erred in denying their motion for directed verdict at the conclusion of Mother and Father's case. Custodians contend that, absent a change of circumstances, the trial court lacked the authority to modify or terminate the order of legal custody. In Custodians' second assignment of error, we found the trial court did not commit error in finding a change in circumstances. Accordingly, we find the trial court did not commit error in denying Custodians' motion for directed verdict. Custodians' third assignment of error is overruled.

IV.

**{¶64}** In their fourth assignment of error, Custodians contend the trial court committed error in finding a grant of legal custody to Mother and Father served the best interest of E.S.

**{¶65}** In the first portion of the assignment of error, Custodians argue that neither the magistrate nor the trial court considered the appropriate best interest factors. However, R.C. 2151.42 does not provide criteria for a best interest determination, as it states, "a court shall not modify or terminate an order granting legal custody of a child unless it finds, based on facts that have arisen since the order was issued * * * that a change has occurred in the circumstances * * * and that modification or termination of the order is necessary to serve the best interest of the child." Accordingly, the statutory scheme regarding a modification in legal custody does not include a specific test or set of criteria for best interest. See *In the Matter of G.B.*, 5th Dist. Stark No. 2021 CA 00039, 2021-Ohio-3621. When determining the issue of legal custody, the trial court should

consider the totality of the circumstances.  *In re D.T.*, 5th Dist. Stark No. 2013CA00252, 2014-Ohio-2495.  Trial courts should consider all factors relevant to the best interest of the child.  *Id.*  In a R.C. 2151.42 determination, courts generally have been guided by the best interest factors contained in R.C. 2151.414(D)(1), or R.C. 3109.04(F)(1).  *In re N.C.*, 5th Dist. Richland No. 20 CA 0004, 2020-Ohio-6929; *In the Matter of A.H.*, 5th Dist. Richland No. 18CA96, 2019-Ohio-1509 (statutory scheme regarding award of legal custody does not include a specific test or set of criteria, and a trial court must base its decision on the best interest of the child).

**{¶66}**  While the magistrate did not state exactly which best interest factors she utilized, the magistrate clearly considered the interaction and interrelationship between E.S. and Custodians/parents; the opinion of the GAL about the relationship between E.S. and Custodians/parents; the custodial history of E.S.; the wishes of Custodians and parents; E.S.'s adjustment to her home and school; the mental and physical health of E.S.; and whether Custodians or Mother/Father have established or are planning to establish a residence outside of Ohio.  The magistrate reviewed these factors in paragraphs fourteen through twenty-five of her decision.  Similarly, the trial court specifically considered and ruled on Custodians' objections with regards to best interest in its judgment entry.

**{¶67}**  Custodians also argue the trial court erred in finding a grant of legal custody to Mother and Father served the best interest of E.S. because the court ignored the positive interactions E.S. had with Custodians, ignored the fact E.S. had been in Custodians' home for a long period of time, ignored the fact that E.S. was thriving in the

home of Custodians, and ignored the substance of abuse of both Mother and Father in its consideration of the best interest factors.

{¶68} We find the trial court's best interest determination to be supported by competent and credible evidence. The evidence indicates Custodians provided a home in which E.S.'s basic, medical, and educational needs were being met. However, the GAL and the visitation supervisor were concerned about Custodians' actions with regard to E.S.'s actions and bond with her parents. The magistrate found the testimony by T.J. at trial regarding moving to Tennessee not credible, as he previously stated at the December hearing that they were trying to build a life in Tennessee and move forward with their life once adopting E.S. Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Both Mother's counselor and Father's counselor testified they do not have concerns about them providing a safe and stable home for E.S. Mother and Father have been compliant with probation, and have drug-tested negative for an extended period of time. Olivieri testified E.S. is bonded to Mother and Father, but was not allowed to share this information with Custodians. Howard testified it is in the best interest of E.S. for legal custody to be granted to Mother and Father. Howard compiled a detailed report and gave extensive testimony as to why she came to this conclusion. The trial court is in the best position to judge the credibility of the witnesses, was able to observe the GAL's and the other witnesses' demeanor on the stand.

{¶69} Custodians' fourth assignment of error is overruled.

V.

{¶70} In their fifth assignment of error, Custodians argue the trial court erred in "misapplying Juvenile Rule 40" as the timely objections to the magistrate's decision operated as an automatic stay of execution of judgment until the trial court disposed of the objections. Custodians contend the trial court ignored the automatic stay provision, despite Custodians' filing of the motion to vacate, by causing the immediate removal of E.S. from Custodians' home when the removal should not have occurred until the court issued its ruling on Custodians' objections. Though Custodians make this argument in their assignment of error, they state in their brief that "[they] are not aware of caselaw addressing such a failure and as such [have] no authority to support any proposed remedy."

{¶71} Custodians contend the trial court ignored the automatic stay provision despite their filing of a motion to vacate/motion to set aside. However, pursuant to Juvenile Rule 40(D)(2)(b), "the pendency of a motion to set aside does not stay the effectiveness of the magistrate's order, though the magistrate or the court may by order stay the effectiveness of a magistrate's order." The filing of the motion itself does not stay the proceedings; however, timely objections do. Though Custodians contend the trial court disagreed with them, in the judgment entry, the trial court agreed with Custodians that the "automatic stay" provision of Juvenile Rule 40 applied in this case because Custodians filed timely objections. The trial court specifically stated it overruled Custodians' motion to set aside, "with the exception of Item 3 of the motion to set aside," which was the argument concerning the automatic stay provision of Juvenile Rule 40(D)(4)(e). However, the trial court essentially found that portion of Custodians' motion

to set aside moot, because it overruled the balance of Custodians' objections. We find the trial court did not commit error in finding Custodians' objection with regard to the automatic stay moot, as the trial court overruled the balance of their objections in the judgment entry and Custodians propose no remedy for a violation of the automatic stay when the custody determination of the magistrate is otherwise affirmed by the trial court.

{¶72} In their appellate brief, Custodians include information about their counsel's interaction with police officers regarding custody of E.S. immediately after the issuance of the May 17, 2022 decision. However, the information regarding the execution of the magistrate's order by police officers is not contained in the record. It is only contained in Custodians' appellate brief. Neither Custodians' original objections or supplemental objections contain any argument or information about the immediate implementation of the magistrate's order. The motion to set aside states that Custodians move to set aside the magistrate's decision because, "the document purports * * * to be effective immediately * * * notwithstanding the automatic stay Juv.R. 40(D)(4)(e)(i) imposes upon the filing of objections to the magistrate's decision." There is no information in the motion to set aside about police involvement, there are no affidavits attached to the motion to set aside, and Custodians did not request a hearing on the motion to set aside. Similarly, Custodians did not file a motion to stay execution or a notice of violation of automatic stay with the trial court. *In re J.A.*, 9th Dist. Summit No. 24332, 2009-Ohio-589; *Tulley v. Tulley*, 11th Dist. Portage No. 2000-P-0044, 2001-Ohio-4307 (motion to stay execution of judgment pending disposition of objections filed).

{¶73} The Ohio Supreme Court has noted, "a reviewing court cannot add matter to the record before it that was not part of the trial court's proceedings, and then decide

the appeal on the basis of the new matter." *State v. Hooks*, 92 Ohio St.3d 83, 2001-Ohio-150, 748 N.E.2d 528 (2001). It is also a longstanding rule "that the record cannot be enlarged by factual assertions in the brief." *Dissolution of Doty v. Doty*, 4th Dist. Pickaway No. 411, 1980 WL 350992 (Feb. 28, 1980), citing *Scioto Bank v. Columbus Union Stock Yards*, 120 Ohio App. 55, 201 N.E.2d 227 (10th Dist. 1963). New material and factual assertions contained in any brief in this Court may not be considered. See *North v. Beightler*, 112 Ohio St.3d 122, 2006-Ohio-6515, 858 N.E.2d 386, quoting *Dzina v. Celebrezze*, 108 Ohio St.3d 385, 2006-Ohio-1195, 843 N.E.2d 386.

{¶74} Custodians' fifth assignment of error is overruled.

{¶75} Based on the foregoing, Custodians' assignments of error are overruled. The August 22, 2022 judgment entry of the Richland County Court of Common Pleas, Juvenile Division, is affirmed.

By Gwin, P.J.,

Wise, J., and

King, J., concur